MAYOR AND CITY COUNCIL OF BALTIMORE

vs.

STATE OF MARYLAND, FOR THE USE OF DAISY A.
BIGGS ET AL.

*Photographs as evidence.   Streets: dangerous condition; lia-*
*bility of municipality.   Negligence: death of husband*
*by——; widow's right to recover damages; decedent's*
*unsworn application for life insurance, not*
*admissible.   Experts: opinion from*
*hearing evidence.   Deceased wit-*
*ness: evidence of; stenog-*
*rapher's notes.*

The testimony of a deceased witness may be proved by the
stenographer who took the testimony, and who testifies from
his notes; it is not proper to allow counsel to read to the jury a
copy of the evidence reduced to writing from the stenographer's
notes.                                                p. 120

Photographs of the locality where an automobile accident
occurred are not rendered inadmissible, merely because the pho-
tographs were taken after the streets had been paved, when the
jury had been advised of that fact and it did not appear that
the paving had anything to do with the accident.    pp. 119-120

While ordinarily a municipality is not required to erect bar-
riers, railings or other constructions to prevent persons who
travel upon a highway from straying therefrom, there is such
an obligation where the point is dangerous either naturally or
on account of the work being done at the time.        p. 116

Whether a street where an accident occurred was in fact
dangerous so as to require the municipality to keep guards or
railings or a light there, is a question that is properly left for
the consideration of the jury.                    pp. 116, 126

In an action of damages for the death of the plaintiff's hus-
band, the photographic copy of the deceased's application for
life insurance, showing his unsworn statement that he was then
in good health, is not admissible evidence.            p. 121

Where an expert who hears the testimony of all the witnesses can not tell from what the injured party died, his testimony is inadmissible because purely speculative.                         p. 124

In estimating the damages for which the widow is entitled for the death of her husband, due to the defendant's negligence, the jury should be confined to what would have been the probable duration of the joint lives of the husband and wife.
                                                                                p. 127

*Decided January 16th, 1918.*

Appeal from the Baltimore City Court.    (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*S. S. Field, the City Solicitor,* and *Benjamin H. McKindless, Assistant City Solicitor,* for the appellant.

*Clifton S. Brown* (with whom was *Augustus J. Quinn* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

Bush street, in Baltimore City, crosses Russell street, sometimes called the Annapolis road, at right angles, and extends to and ends at what is spoken of in the evidence as the northwest side of Russell street.   There is a sewer under the bed of Bush street, which also crosses Russell street at right angles, and extends to the northwest side of Russell street and there empties in Bush street dock.   At the mouth of the sewer at the end of Bush street there was a stone wall, which ran parallel with Russell street and the coping of which was about forty feet long.   There were two street car tracks on Russell street where it crossed the end of Bush street, and the coping of the wall, which ran along the

northwest side of Russell street and at the end of Bush
street was, according to the testimony of some of the wit-
nesses, only about six inches above the surface of Russell
and Bush streets at their intersection, or above the surface
of the ground adjoining the coping. At the time of the
accident which gave rise to this suit there was an arc light
about seventy or one hundred feet from the corner of Bush
and Russell streets, or from the end of the coping, and
another light between one hundred and fifty and two hun-
dred feet further from the crossing.

On the night of February 27th, 1915, Albert Biggs while
operating an automoible on Bush street where it crosses
Russell street ran over the end of Bush street and into the
Bush street dock. He died on the 11th of March following,
and this suit was brought for the use of his widow and
children to recover damages occasioned by his death, which
is alleged to have resulted from his being thrown into the
dock and to have been caused by the negligence of the Mayor
and City Council of Baltimore in permitting Bush street
where it adjoined Bush street dock to be and remain in
an unsafe condition for public travel.

This is the second appeal in the case. At the first trial
the lower Court withdrew the case from the jury on the
ground that there was no evidence legally sufficient to prove
negligence on the part of the city, and on the further ground
that it appeared that the deceased had been guilty of con-
tributory negligence. This Court reversed the judgment in
favor of the defendant in 129 Md. 686, and awarded a new
trial. Describing the scene of the accident JUDGE BRISCOE
there said: "At the foot of Bush street and on the sewer
there was a stone wall, the coping of which was about six
or seven inches above the surface of the adjoining ground
and adjacent to and alongside of the Annapolis road, and
there was testimony that this coping, to one walking down
Bush street at night could not be seen 'until you got right
on top of it.' While there were two arc lights attached to

116     M. & C. C. OF BALTO. vs. BIGGS.

Opinion of the Court.                    [132

poles, one across the road at Bush street and the Annapolis road, and the other about 150 or 175 feet distant to the west from the first light, there is a conflict in the testimony, as to whether the arc lights there located furnished sufficient light and warning to enable travelers or strangers passing at night, along Bush street, to see that this street ended at the Annapolis road and Bush street dock. There was no light upon the stone wall and no guard around or near the coping on the wall, and this coping was only about six or seven inches above the surface of the ground." In support of the rule that it is the duty of a municipality to keep its streets in a safe condition for public travel, JUDGE BRISCOE quotes the prayer approved by this Court in *Mayor and City Council v. O'Donnell*, 53 Md. 110: "That it was the duty of the defendant to take proper precaution, by proper guards, signals, lights or other warnings, to warn persons of the impassable condition of the street, so as to prevent injuries to persons passing along said street, and if the jury further find that the defendant and those employed by it in repairing and recurbing said street, did not use ordinary care in providing such precautions and that the plaintiff in consequence of such neglect to provide such precautions was thrown from his hack while driving with ordinary care along said street, then the plaintiff is entitled recover," and then quotes with approval the statement of the Court in *Mayor and City Council of Baltimore* v. *Hutchinson*, 166 Fed. 647: "Undoubtedly, a municipality is not required ordinarily to erect barriers, railings or other construction to prevent persons traveling upon a highway from straying therefrom; but it does not follow that the obligation does not exist where the point is dangerous, either naturally or because of the work being done in and about the highway at the particular time. Whether the excavation in this case was dangerous, or the railing thereto, or the warning given was sufficient to protect persons from or warn them of such danger were questions of fact, all to be determined by the jury upon consideration of the whole evidence."

During the second trial, which resulted in a verdict and judgment in favor of the plaintiff for $10,000.00, the defendant reserved twenty-nine exceptions to rulings of the Court on the evidence and a further exception to the action of the Court on the prayers.

The first sixteen exceptions, except the twelfth exception, relate to the admissibility of these photographs of the scene of the accident. The accident occurred on the 27th of February, 1915, and the photographs were taken sometime in April following. The evidence shows that between the date of the accident and the time the photographs were taken Bush street and Russell street, where it crosses Bush street, had been paved, and one of the defendant's witnesses testified that some little grading had been done on Russell street at that point. But the photographer who took the photographs testified that they correctly represented the conditions existing at the time they were taken, and a number of plaintiff's witnesses testified that they fairly represented the scene of the accident as it appeared on the 27th of February, except that the streets referred to were not then paved, but were dirt roads, or were paved with cobblestone which were then covered with dirt. The photographs were admitted in evidence over the objection of the defendant with leave to either of the parties to prove any changes they showed in the surface of the streets, and the Court then called the jury's attention to the fact that the parties agreed that the streets at the time of the accident were not smooth streets as represented by the photographs, but "were cobblestones." It is said in 17 *Cyc.*, 417: "When in an action for personal injuries or other action of tort, or in criminal prosecutions, it becomes material to know the location, surroundings and condition of the premises upon which the accident, injury or crime in controversy occurred, photographs of the *locus in quo,* if verified by proof that they are true representations, are competent evidence. But the value and admissibility of the photograph, as in other cases, depends upon the

fact that it is a correct representation of the place in ques-
tion, and that the condition existing when it was taken was
an accurate reproduction of the condition existing when the
accident, injury or crime occurred." While this rule has
been followed in this State (*Columbia, etc., R. Co.* v. *Huff,*
105 Md. 34), this Court has also recognized the principle
that slight changes in the condition, which do not destroy
the substantial identity of the location, should not render the
photographs inadmissible, and that the matter is one that
should be left largely to the discretion of the trial Court.
In the case of *Consol. Gas. Co.* v. *Smith,* 109 Md. 186, the
Court said: "As to whether a photograph is sufficiently veri-
fied, or is practically instructive, the question is a prelim-
inary question, for the Court, and while there is some diver-
sity of authority as to whether the determination of the
Court in this respect is open to review or not, we think the
weight of authority is that this discretion is not the subject
of exception unless it is plainly exercised in an arbitrary
manner. * * * In all such cases, if there is evidence of
changes in the condition or surroundings of the object since
the accident, this may lead to the exclusion of the photo-
graph, and should do so, where the substantial identity of
the conditions has not been preserved." In the case of *Md.
Elec. Ry. Co.* v. *Beasley,* 117 Md. 270, there was an excep-
tion "to the admissibility of photographs taken sometime
after the accident and after a change of seasons," and in
disposing of it, JUDGE PEARCE, speaking for this Court, said:
"In the case before us certain trees which were referred to
by the driver as obstructing the vision, and which were in
leaf at the time of the accident in June, had been since
trimmed, though only in the tops, and there had been a fall
of snow when the photograph was taken. It is not possible
to lay down a general rule as to what changes shall require
an exclusion of photographic representations of the locality,
but the trial Court with the photographs before it, and the
witness who took them, ought to be conceded some discretion

in admitting or rejecting them, and we should not feel war-
ranted in reversing this judgment upon that ground, without
clear proof that injury was thereby inflicted upon the de-
fendant." In the case of *Beardslee* v. *Columbia Township,*
188 Pa. St. 496, 41 Atl. 617, the Supreme Court of Penn-
sylvania said: "The further objection in the present case,
that the photograph was not taken until after the township
defendant had made changes in the road at the place of the
accident, is not without difficulty. In photographs, as in
plans, maps or other drawings used as evidence, there ought
to be substantial identity in the person, place or thing photo-
graphed, and that which the jury are to consider in the case.
But photographs of the scene of an accident, taken at or near
to the time, are not always obtainable; and bearing in mind
the object sought,—the assisting of the jury, by knowledge
of the locality, to judge the conduct of the parties with
reference to the issue raised,—the only practical rule would
seem to be that the changes must not be such as to destroy
the substantial identity, and that the changes, whatever they
are, must be carefully pointed out and brought to the jury's
attention. This would have to be the course pursued if a
view were allowed to the jury at the trial, and no other
appears practicable in regard to plans, photographs or other
substitutes for a view. With these safeguards, the subject
must be left largely to the discretion of the trial judge. In
the present case we cannot see that there was any error in
regard to the photographs of which the appellant is now
entitled to complain." See also *Dyson* v. *New York & N.
E. R. Co.,* 57 Conn. 9, 17 Atl. 137. In the case at bar the
only purpose of offering the photographs was to show the
location of Bush and Russell streets, the mouth of the sewer
and the dock at the place of the accident. There was no
change in the conditions in respect to these objects, and it is
not possible that the repaving of the streets, of which the
jury was advised, could have rendered the photographs mis-
leading or deceptive as to their location at the time of the

accident. It is not claimed that the photographs do not fairly represent the location of the light near the corner of Bush and Russell streets, and so far as the height of the coping above the surface of the street or the adjoining ground, to which so much of the evidence was directed, is concerned, the photographs, which were exhibited to this Court, if they can be said to furnish any indication, are more favorable to the defendant than the testimony of the plaintiff's witnesses.. The changes in the condition at the place of the accident, pointed out in the evidence, are not such as to justify the Court in holding that the photographs were not helpful to the jury, and that there was error in admitting them. Moreover, it appears from the record that after they were admitted in evidence, the jury, during the trial, with the consent of the Court and counsel, visited and viewed the scene of the accident. Under such circumstances it could hardly be said that the admission of the photographs was prejudicial and reversible error.

The twelfth exception is to the ruling of the Court allowing counsel to read a "stenographic copy of the testimony of a deceased witness who testified at the first trial." While the testimony of a deceased witness may be proved by the stenographer who took the testimony and who testified from his notes, or by a witness who heard the testimony, it is not proper to allow counsel to read to the jury a copy of the evidence reduced to writing from the stenographic notes. *Ecker* v. *McAllister*, 54 Md. 362; *Herrick* v. *Swomley*, 56 Md. 439; 10 *R. C. L.*, Sec. 154, page 972. Counsel for the appellant stated that this exception was not important, and after reading the evidence we would not be disposed to reverse the judgment because of its admission.

The seventeenth and eighteenth exceptions are to the admission in evidence of a photographic copy of the application of the deceased for insurance in the John Hancock Mutual Life Insurance Company and the report of the result of the medical examination of the deceased made by

Doctor Von Dreele. Doctor Von Dreele testified that he did not know whether the Wm. A. Biggs mentioned in the application was the same person as the deceased; that he did not know whether the photographic copy was a true copy of the original, did not know how it was taken and had never compared it with the original; that he had no recollection of having examined the applicant and could not tell what examination he made or when he made it, but that all of the writing in the photograph was in his handwriting except the amount of the insurance and the signature of the applicant. Apart from the question whether the plaintiff laid a proper foundation for the introduction of a *copy* of the application and report, we think the evidence was clearly inadmissible. It was offered for the purpose of showing that the deceased was in good health on the 29th day of January, 1915, and the unsworn statements of the deceased were not admissible for that purpose. There could have been no objection to the Doctor using the original *report*, or a properly proven photographic copy of it, as a memorandum made by him to refresh his recollection of the result of his examination of the deceased, or of the party mentioned therein, known to him or otherwise shown to be the Albert Biggs for whose death the plaintiff seeks to recover, and it is not necessary to determine whether the report would have been admissible as entries made in the ordinary course of professional employment. *Gorter on Evidence,* p. 119, sec. 5. But even the original *application* would not have been admissible as evidence of the physical condition of the deceased at the time mentioned, and if there was any evidence in the case tending to show that the deceased was not in good health at the time he applied for the insurance, the admission of the application would have been serious error. But in the absence of such evidence, and in view of other evidence in the case as to his physical condition at the time of the accident, the judgment ought not to be reversed because of this ruling.

122      M. & C. C. OF BALTO. vs. BIGGS.

Opinion of the Court.                    [132

The evidence referred to in the 19th exception is not of sufficient importance to warrant this Court in holding that its admission was reversible error, even if we were of the opinion that it was not, strictly speaking, admissible. But we think it was admissible as a part of Mrs. Biggs' description of the condition of the deceased shortly before his death.

The 20th, 21st, 22nd and 23rd exceptions relate to the testimony of Doctor Burrows, who testified as an expert. After he stated that he had read all the testimony in the case he was asked, assuming the testimony to be true, "What, in your opinion, did Biggs die of"? After the Court overruled defendant's objection to the question, the witness replied: "After reading all the testimony, I do not think that it would be possible to give a diagnosis of the cause of death in the case of Mr. Biggs. But, on the other hand, I failed to find any evidence that he was not a healthy man up to the time that he was immersed. Owing to the fact that he died eleven days after his immersion, and knowing that an immersion of that kind can be the direct or indirect, or I might say the immediate or subsequent cause of death in a perfectly healthy man, I think that the circumstantial evidence is entirely in favor of the view that he died as the result of this immersion. At least, I can not find any evidence which would indicate that he died from other causes." The witness then went on to state at some length his reasons for his conclusion that the deceased died of some pulmonary trouble. The defendant moved to strike out his testimony but the Court overruled the motion. On cross-examination he testified as follows: "Q. If I understand you correctly, you say that you do not think it was possible to give a diagnosis in this case, is that correct? A. I could not give a diagnosis without a physical examination or an autopsy. Q. What do you mean by giving a diagnosis, telling the cause of death? A. Yes, the cause of death. Q. In other words, you can not state definitely what the cause of death

was, is that correct? A. Yes. Q. You can not say what disease he died of, is that correct? A. That is correct. * * * Q. Not being able to make a positive diagnosis, that means that you are not able to tell definitely what Mr. Biggs died of, is that correct? A. That is correct. Q. And not being able to tell from what disease or condition he died, of course you can not tell what predisposed the condition of a disease that you do not know? A. No, sir; I can not." The defendant again moved to strike out the testimony of the witness, but the Court overruled the motion, and the witness on further cross-examination testified as follows: "Q. This man did not die of pneumonia in your opinion did he? A. If I were just making a guess I would say that he died * * *. Q. But we do not want to guess, we are here seriously, not guessing? A. That is the only thing you can do in a case like this. Q. It would be a mere guess, wouldn't it? A. Yes; you do not have enough evidence to say definitely, but the evidence points toward a death from some pulmonary trouble. Q. It is a mere probability that it came from some long involvement and you used the word 'guess' I believe, didn't you? A. I said if you wanted to guess, I mean it would be your only guess. I do not have enough evidence to say definitely. We do not make diagnoses without physical examination or autopsies." The defendant renewed his motion to strike out the testimony of the witness which the Court overruled. There was no error in the ruling in the 20th exception. In *City Pass. Ry. Co. v. Tanner,* 90 Md. 315, this Court quoted with approval the statement in *Gilman* v. *Town of Strafford,* 50 Vt. 727: "Where an expert hears or reads the evidence, there is no reason why he may not form as correct a judgment based upon such evidence, assuming it to be true, as if the same evidence was submitted to him in the form of hypothetical questions; and it would seem to be an idle and useless ceremony to require evidence with which he is already familiar to be repeated to him in that form." See also—*Damn* v. *State,* 128 Md. 665.

We think there was error, however, in the rulings in the
21st, 22nd and 23rd exceptions.   The witness stated that it
was impossible for him to say from the evidence in the case
what was the cause of the death of the deceased, and that
without having made an examination of the deceased or an
autopsy he could not do anything more than guess as to the
cause of his death.   *United Rys. Co. v. Corbin,* 109 Md.
442.

The 24th exception is disposed of by what we have said
in reference to the 20th exception, and the 25th, 26th, 27th
and 28th exceptions are to the refusal of the Court to strike
out the testimony of Doctor Wyse, who, when asked to
state what his opinion was, from all the evidence in the case,
as to the probable and approximate cause of the death of
the deceased, said: "Taking into consideration the evidence
that Mr. Biggs was healthy up to the time of the accident,
taking into consideration that it was in February and that
the weather was cold, that he practically fell into a sewer
and the water was dirty and foul and cold, that he was in
the water a few minutes and in wet clothes for a longer
period of time, and the fact that he had a cough all during
the succeeding week or ten days, that he was described as
looking bad and that he had a chill the night of his death,
or the evening before he died, and that the description of
the seizure or paroxysm he had during the night with cough,
a rattling or expectoration, my opinion is that he died of
some lung condition, probably inflammatory, as the result
either of the cold or a combination of the cold, and the tak-
ing of foul water into his lungs."   The contention of the
appellant is that there was no evidence in the case to show
that the deceased got water in his lungs and that therefore
the answer of the witness was inadmissible.   On cross-exam-
ination, when asked if there was any evidence in the case
that Biggs got water in his lungs, Doctor Wyse replied that
the deceased was the only person who could have testified to
that, but that his opinion was based upon the probability

M. & C. C. OF BALTO. vs. BIGGS.          125

Md.]                    Opinion of the Court.

that he did get some water in his lungs, and we think the reply of the witness is a sufficient answer to the contentions of the appellant in reference to the rulings in these exceptions.

Michael J. Cooney, a witness produced by the defendant, who saw the deceased at the hospital immediately after the accident, testified that "he looked as though he had been drinking." He was then asked, "How did that manifest itself?" and he replied, "His talk and his actions." To the question, "To what extent did he appear to be under the influence of liquor?" he replied, "From his talk and his actions he looked as though he had been drinking." The defendant then asked the witness, "The question is to what extent did he seem to be under the influence; was the man simply exhilarated, or was he pretty well intoxicated or otherwise?" The plaintiff objected to the question and the Court sustained the objection, and the 29th exception is to that ruling. We think the question was a proper one, but after the exception was noted the witness was given a further opportunity to answer the question and testified to the conduct and talk of the deceased upon which he based his opinion that he had been drinking, and the defendant could not therefore have been prejudiced by the ruling.

This brings us to the ruling on the prayers. By the plaintiff's first prayer the jury were instructed "that it was the duty of the defendant to take proper precautions by proper guards, signals, lights or other warnings to warn persons of the conditions existing at the foot of Bush street, so as to prevent injuries to persons using said street, and if they find from the evidence that the defendant did not use ordinary care in providing such precautions, and that Albert Biggs, in consequence of such neglect to provide for such precautions, drove an automobile into the water of Bush Street Dock while in the exercise of ordinary care on his part and lost his life thereby, if they so find, then their verdict must be for the defendant." This prayer was approved in *Balti-*

*more* v. *O'Donnell, supra,* where the plaintiff was injured by coming in contact with a rope that had been stretched across a street which was being repaired and was impassable, to prevent travel thereon. A lamp had been suspended from the rope to warn persons, but the lamp had been broken and the light extinguished by stones thrown by some boys, and the plaintiff in attempting to pass up the street, driving a hack, came in contact with the rope of which he had no warning and was injured. In that case, the street was *impassable,* and there was no question of the *dangerous condition* thereof. But on the former appeal in this case this Court, as we have said, quoted with approval the statement of the Court in *Mayor and City Council of Baltimore* v. *Maryland, supra,* "Whether the excavation in this case was dangerous, or the railings thereto, or the warning given was sufficient to protect persons from or warn them of such danger, were questions of fact, all to be determined by the jury upon consideration of the whole evidence." The plaintiff's first prayer was in effect a determination by the Court that the place of the accident was dangerous, and that it was therefore the duty of the defendant "to take proper precautions by proper guards, signals, lights or other warning to warn persons of the conditions existing at the foot of Bush street." Whether the condition existing at the foot of Bush street made the street dangerous was, we think, a question that should have been submitted to the jury. In the case of *Reisterstown Turnpike* v. *State,* 71 Md. 573, this Court, referring to the evidence as to the condition of the pike, said: "But whether it was unsafe and dangerous, was a question for the jury, to be determined upon consideration of all the evidence."

Plaintiff's second prayer is within the principle stated in *W. Md. R. Co.* v. *Shirk,* 95 Md. 637, and *B. & O. R. Co.* v. *Hendricks,* 104 Md. 76, and is free from objection. Plaintiff's fourth prayer as to the measure of damages should have been framed in accordance with the suggestion made in *Reisterstown Turnpike* v. *State, supra,* and the form ap

proved in *B. & O. R. Co.* v. *Stunz,* 79 Md. 335.   But it is not probable that the jury were misled by it, as by the defendant's sixteenth prayer they were instructed that in estimating the prospective damages to the widow they were confined to the probable duration of the *joint* lives of Mr. and Mrs. Biggs.

The defendant's first, second, third, fourth and fifth prayers are disposed of by what was said on the former appeal, and its tenth, twelfth, thirteenth and fourteenth prayers, in so far as they are free from objection, are covered by the defendant's granted prayers.   Its eleventh prayer, however, should have been granted.   The defendant was entitled to have the jury's attention called to the light at the intersection of Bush and Russell streets, and to an instruction that if the jury found that the light was sufficient, at the time of the accident, for the deceased, by the exercise of ordinary care, "to have seen the limits of the roadway of said streets, and to have avoided running off the same into the water," the verdict of the jury should be for the defendant.

Because of the errors pointed out in the twenty-first, twenty-second, twenty-third and thirtieth exceptions, the judgment must be reversed.

> *Judgment reversed, with costs, and a new trial awarded.*