## THOMAS WIMPLING *v.* STATE OF MARYLAND
[Nos. 51-54, October Term, 1936.]

*Decided January 14th, 1937.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Maurice T. Siegel* and *Isidore Ginsberg,* with whom were *Ginsberg & Ginsberg* on the brief, for the appellant.

*Hilary W. Gans, Deputy Attorney General,* with whom were *Herbert R. O'Conor, Attorney General,* and *Roscoe*

C. Rowe, State's Attorney for Anne Arundel County, on the brief, for the State.

OFFUTT, J., delivered the opinion of the Court.

The appellant in these cases was indicted, tried and convicted before the court, sitting as a jury, in the Circuit Court for Anne Arundel County, of the crime of statutory arson, and from the judgment entered on the verdict in the case has appealed to this court.

The indictment contained two counts. In the first, the grand jury presented that he "feloniously did wilfully and maliciously set fire to and burn, and cause to be burned a certain dwelling house, the property of Charles Heintzman, the said dwelling house then situate at Cottage Beach Grove, in the said Anne Arundel County," and in the second, that he "feloniously did wilfully and maliciously aid, counsel and procure the burning of a certain dwelling house of the said Charles Heintzman, the said dwelling house being then situate at Cottage Beach Grove, in said Anne Arundel County," and both concluded against the form of the statute and as at common law. A demurrer to the indictment and each count thereof was overruled. The appellant then entered a general plea of not guilty, and the case proceeded on those pleadings until "just before the verdict" when the State "abandoned" the second count. After the verdict he filed a motion in arrest of judgment on the grounds (1) that the indictment and each count thereof were "bad on their face"; (2) that there was a variance between the evidence and the indictment and each count thereof; and (3) that the verdict was improperly entered. That motion was also overruled and he then filed (1) an appeal from the judgment; (2) an appeal from an order overruling the demurrer; (3) an appeal from the order overruling the motion in arrest of judgment; and (4) on July 8th, 1936, a second appeal from the judgment.

Since the first appeal raised all questions intended to be presented by the second, third, and fourth appeals (being Nos. 52, 53, and 54 on this docket), they were

unnecessary, improvidently entered, and must be dismissed.

In the course of the trial the appellant reserved eight exceptions to rulings of the court on the admissibility of evidence. The appeal in No. 51 of this docket requires a review of those rulings as well as the court's action in overruling his demurrer to the indictment and his motion in arrest of judgment.

The demurrer to the whole indictment was based upon the contention that the first count charged appellant as a principal, and the second as an accessory to the same offense, and that the two counts could not be combined in the same indictment.

The objection urged to the second count of the indictment was that it failed to designate the agency through which the actual burning was done with sufficient particularity to inform the defendant of his identity. It is axiomatic that an indictment must describe the offense with which it charges the defendant with sufficient particularity to inform him of its nature, and to permit him to plead any judgment that may be entered in the case in bar of any future prosecution for the same offense. It is also settled that in the case of a statutory offense it is sufficient to charge the offense in the words of the statute but with such other particulars as may be necessary to identify that particular offense and distinguish it from all others, in order that the defendant may be sufficiently apprised of the charge against him to prepare his defense.

The second count of the indictment fails to meet that test, since it neither states the name of the person who did the actual burning, nor that such name was not known to the grand jury. In 31 *C. J.* 739, it is said: "All the material averments of an indictment against the principal must be embodied in the indictment of an accessory before the fact, and the same particularity is required. The commission of the offense by the principal must be alleged, unless, in case of a felony the principal has been convicted, in which case it is sufficient, at com-

mon law, to recite the record of the conviction, and his name must be stated where known, but if unknown it is sufficient that such fact be alleged."

In *United States v. Simmons*, 96 U. S. 360, 362, 24 L. Ed. 819, in considering the following count in an indictment, "Did knowingly and unlawfully cause and procure to be used a still, boiler, and other vessel, for the purpose of distilling, within the intent and meaning of the internal revenue laws of the United States, in a certain building and on certain premises where vinegar was manufactured and produced, against the peace of the United States and their dignity, and against the form of the statute of the said United States in such case made and provided," the court said:

"Where the offense is purely statutory, having no relation to the common law, it is, 'as a general rule, sufficient in the indictment to charge the defendant with acts coming fully within the statutory description, in the substantial words of the statute, without any further expansion of the matter.' 1 *Bishop Crim. Proc.*, sec. 611, and authorities there cited. But to this general rule there is the qualification, fundamental in the law of criminal procedure, that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defense, and plead the judgment as a bar to any subsequent prosecution for the same offense. An indictment not so framed is defective although it may follow the language of the statute.

"Tested by these rules, the second count is insufficient. Since the defendant was not charged with using the still, boiler, and other vessels himself, but only with causing and procuring some one else to use them, the name of that person should have been given. It was neither impracticable nor unreasonably difficult to have done so. If the name of such person was unknown to the grand jurors, that fact should have been stated in the indictment."

The demurrer to that count should therefore have been sustained.

The objection to the first count that it did not sufficiently allege the ownership of the house that was burned is obviously without force, and the demurrer to that count was properly overruled.

But while there was error in overruling the demurrer to the second count of the indictment, the error was not reversible, because "just before verdict," the State abandoned the second count, and the verdict was guilty "on first count." The appellant was not therefore injured by the error. 17 *C. J.* 285, 283.

In view of these conclusions, it would not be necessary to consider the action of the court in overruling the demurrer to the whole indictment but for the fact that the appellant contends that the "abandonment" of the second count was without his consent, and that he was prejudiced thereby, because he contends he could not be legally tried under an indictment which charged him both as an accessory and as a principal.

One fallacy of that contention is its essential premise that the second count charges the defendant as an accessory. It is true that at common law "an accessory before the fact is one who, though absent at the time of the felony committed, doth yet procure, counsel, command or abet another to commit a felony. 1 *Hale P. C.* 615; *R. v. McDaniel,* 19 St. Tr. 745; Fost. 121; 1 *East, P. C.* 352; 1 *Chit. Cr. L.* 262; and see *Steph. Dig. Cr. L.* (6th Ed.) 33" *Archbold's Crim. Ev. Pl. and Pr.* 1417; Arson is a felony (2 *Wharton Crim. Proc.,* sec. 1052, 2 *Bishop Crim. Law* sec. 18), and if the burning alleged in the count constituted arson as defined by the common law, the language used might at common law well be held to charge the defendant as an accessory rather than as a principal. But the indictment and each count thereof are under the statute and not at common law, and under the statute one who aids, counsels, or procures the burning of a dwelling house is guilty of arson as a principal and is subject to the same punishment as though he had himself actually burned it. Code (1935 Supp.), art. 27, sec. 6. Arson as defined in that section includes not only

the physical act of setting fire to the dwelling, but also the act of aiding, counseling, or procuring another to do so.

The statute provides in part "Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto, whether the property of himself or of another, shall be guilty of arson, and upon conviction thereof, be sentenced to the penitentiary for not less than two nor more than twenty years." Code (1935 Supp.), art. 27, sec. 6. It is consistent with that language that one may be guilty of arson if he has counseled the burning of a house even though there has been no actual burning, since the mere willful and malicious counseling of a burning, under the language of the statute read literally, without more, constitutes arson. That definition is, however, not only contrary to the common law definition of the crime, but it is also wholly foreign to any meaning given the word in any known usage. It was within the power of the Legislature to define the crime of unlawfully burning property, and to designate the crime defined by it by such name or title as it deemed appropriate, and this court is bound by its language. In the absence of anything to indicate a contrary intent, it must be assumed that the words used have the meaning naturally given them in ordinary usage, for if the language used is plain and unambiguous there is no room for construction. *Baltimore v. Deegan,* 163 Md. 234, 161 A. 282; *Tull v. Fitzgerald,* 167 Md. 429, 175 A. 216.

But from the context it seems obvious that what the Legislature had in mind in using the term "counsels," was counseling the burning of a dwelling which had in fact been burned, not merely counseling a crime which was never committed. Because the use of the word "arson" to describe an act which did not result in setting fire to a dwelling or other structure is so contrary to any accepted definition of it (*Bouvier's Law Dict., Rawle's*

*Third Revision,* p. 246), that its use to describe an offense not connected with any actual burning is so unusual as to itself render ambiguous any such use of it. It may therefore be assumed that in the use of the word "counsel" the Legislature meant to "counsel" the burning or setting fire to a dwelling house which in fact has been burned or which has been set on fire. And while at common law one who aids, counsels, or procures another to wilfully and maliciously set fire to a dwelling house is an accessory, by the statute he is made a principal, and his act in so counseling, aiding, or procuring is in itself a substantive offense. 1 *Hale P. C.* 615; *Odger C. L.* 132; 1 *Bouvier Law Dict., Rawle's Third Revision,* p. 100.

But since the crime charged in the first count was of the same general nature as that charged in the second count, it was not improper to join them in the same indictment, *Hochheimer on Crime & Crim. Proc.* (2nd Ed.), sec. 106; *Joyce on Indictments,* sec. 532; see, also, ch. 25 *Id.; Wharton on Crim. Proc.,* sec. 335 (10th Ed.), even though in the one the defendant had been charged as an accessory and in the other as a principal (31 *C. J.* 778; *Hochheimer on Crime & Crim. Proc.,* sec. 106; *Archbold's Crim. Pl.,* etc., 56; *Joyce on Indictments,* sec. 125; *Bishop, New Crim. Proc.,* sec. 449), since both are felonies (*Bishop on Crim. Law,* secs. 672 and 673) of the same grade and subject to the same punishment. It cannot therefore be said that the two counts were improperly joined in the indictment. *Wharton Crim. Proc.,* secs. 339-342, *Bishop Crim. Proc.,* sec. 467.

No objection was urged in this court to the court's action in overruling the motion in arrest of judgment, and for that reason it is unnecessary to consider it further than to say that after an examination of the record in connection with it, we have found that ruling free from error.

The record presents eight exceptions to rulings on the admissibility of evidence. The first was to the action of the court in allowing Charles H. Heintzman, alleged owner of the burned dwelling, to answer this question:

"Among others did you lease one of your bungalows during April and May of this year to Mr. and Mrs. William Ford of Baltimore? That's in writing?" The answer was "I presume it was, I don't know whether writing or verbal, I am under the impression that it was verbal." Wimpling, the appellant, was the father of Mrs. Ford, and he occupied the bungalow. Appellant's objection is that the indictment charged that the house was the "dwelling house of one Charles Heintzman," and that proof that it was merely the property of Heintzman was irrelevant. The indictment, however, did not charge that Heintzman dwelt in the house, but that it was his property. And while the common law rule is that an indictment for arson should allege ownership in the one rightfully in possession of the property rather than in the real owner (5 *C. J.* 564; *Bishop's New Crim. Proc.,* sec. 36), where under a statute the offense is against the property rather than against the security of the habitation ownership may be laid in the real owner "irrespective of the occupancy," 5 *C. J.* 565; *Wharton Crim. Proc.,* secs. 426-428. And since in this case the statute (Code [1935 Supp.], art. 27, sec. 6) is directed against the burning of any dwelling house, whether the property of the person charged or another, irrespective of whether it is occupied, the offense is against the property, and ownership may properly be laid in the owner of the fee even though another may actually occupy it as his tenant. There was no error, therefore, in the ruling.

The fire described in the indictment occurred on May 5th, 1936. In the course of the examination of Heintzman, he was asked: "During the night of Sunday, May 3rd, did a fire occur in this bungalow in which Wimpling was living?" An objection to that question was overruled, and the witness gave this answer: "I was awakened Sunday morning about three o'clock or 2:30 by a neighbor and informed there was a fire in bungalow No. 11. This was the cottage Wimpling alone was occupying. I immediately called the Department and went there with the assistance of the Fire Department and bucket bri-

gade, we put out the fire. I had a conversation with Mr. Wimpling the following day and he demanded that the windows and the property be repaired at once. I told him the property was insured and that the underwriters would have to see the damaged condition before I could touch it. While I was questioning him his conduct was very abusive and threatening." That ruling is the subject of the second exception.

There was neither evidence nor offer of proof to show that Wimpling was responsible for the fire that occurred on May 3rd, or that that fire was in any way connected with the fire on May 5th, described in the indictment. The fact that a fire had occurred in the dwelling on May 3rd was therefore irrelevant and immaterial, and the objection to the question should have been sustained. 16 *C. J.* 893.

In the course of the trial certain photographs purporting to represent the building after it was burned were offered in evidence, and admitted over objection. There was no proof that they were a correct representation of the building at the time they were taken, nor was there any evidence identifying them with the different parts of the building they purported to portray. Ordinarily the admissibility of photographs as evidence is within the discretion of the trial court (*Snibbe v. Robinson,* 151 Md. 658, 663, 135 A. 838; *Baltimore v. Biggs,* 132 Md. 113, 117, 103 A. 426), but that rule is only applicable where the photographs are shown by competent extrinsic evidence to be true representations of the scene or object which they purport to represent at the time when the appearance of such scene or object is relevant to the inquiry in connection with which the photographs are offered, 22 *C. J.* 921; *Baltimore v. Biggs, supra; Western Md. Rwy. v. Martin,* 110 Md. 554, 73 A. 267; *Consol. Gas, Electric Light & Power Co. v. State,* 109 Md. 186, 72 A. 651. In this case the proof failed to meet that test, for while it was stated that "that," apparently meaning one of the photographs, was a representation of the building, there was nothing to identify the particular photograph

shown the witness, nor was there any proof that the representation was accurate, and they should have been rejected.

The fourth exception was noted to the action of the trial court in overruling an objection to a question asked of Dan Vickers, a witness for the State, concerning a fire which had occurred in the cottage or bungalow described in the indictment on May 3rd, before the fire which destroyed it, which occurred on May 5th, 1936. Since there was no proof of any connection between the two fires, or that Wimpling had in any way been responsible for that which occurred on May 3rd, the objection should for the reasons given in dealing with the second exception have been sustained.

The same witness was permitted over objection to identify a "watering can" as the property of Mr. Heintzman, which he said was kept "originally" in Heintzman's stable one hundred or more feet from the cottage occupied by Wimpling, and subsequently John C. Bayne, chief of the Riviera Fire Department and a driver for the American Ice Company, was permitted to testify that he had found "this can sitting out back of the building" and that it "smelt like kerosene." There was no proof to show how far from the building it was, whether it was on the lot on which the burned building stood, whether it had ever been in Wimpling's possession, what use Heintzman made of it, or that Wimpling even knew of its existence. The evidence concerning it, which is the subject of the fifth exception, was therefore irrelevant and should have been excluded. The same witness was also asked whether from his observation he was able to determine "the part of the building in which the fire started" and over objection answered: "From my examination of the fire the greatest part of the building that was standing was where the first floor was, that was the rear part, the front part was destroyed." Irrespective of the propriety of the question, the answer was as to a matter within the observation of the witness, and could not possibly have injured the appellant.

Joseph F. Daugherty, an investigator for the State Insurance Commissioner, "investigated" the fire, apparently on May 7th. He testified that an oil container on "top of the oil stove had crushed down and fallen on its own body on top of the frame that held it, and it was in the back of this small kitchen." He was then asked whether if that "oil container had broken and the oil spilled on the floor, is there any way that could have come in contact with the wick of that stove?" He answered: "The fire did not originate in the kitchen at all as the front part of the building was completely destroyed, the roof and all, and the kitchen was still intact as a whole, with the exception of the scorching from the heat on the inside of the boarding." The court overruled a motion to strike out that answer, and the witness was then asked, "From your experience with fires can you tell the court where that fire originated?" An objection to that question was also overruled and the witness answered: "I can definitely say that it did not start in the rear, but what part of the front it started in I can not say, but it had to start in the front because it destroyed it." Those rulings are the subject of the seventh and eighth exceptions.

No principle of the law of evidence is more firmly settled than that the opinions of witnesses upon matters within the range of the common knowledge of the average man are inadmissible, *Jones on Evidence,* sec. 359, because, as stated by Jones: "If it were a general rule of procedure that witnesses might be allowed to state not only those matters of fact about which they are supposed to have knowledge, but also the opinions they might entertain about the facts in issue, the administration of justice would become little less than a farce." *Id.* On the other hand, it constantly happens that observed facts or conditions are of such a character that they cannot be so described that one not an eye witness can fully understand them, without including in the description the witness' opinion, because the substantive fact may be affected by factors and conditions which, because of their number, or their evanescent and intangible character, cannot be

sufficiently described without including the subjective impression which they made upon the witness. There can, of course, be no all-inclusive catalogue of these exceptions, but a number of cases illustrating their nature are collected in *Jones on Evidence,* sec. 360, n. 3. The test, therefore, of the admissibility of the opinion of a lay witness is whether the subject of the opinion may be so described as to afford the trier of fact the same opportunity of construction as the witness. If it can be so described, the opinion of the witness is inadmissible, if it cannot, the opinion may be admitted.

The admissibility of expert opinion rests upon a different ground, that known or provable facts may have a meaning which cannot be read, except by persons specially qualified by skill, experience, training, and study to interpret them.

So if the subject-matter is within the common knowledge of ordinary men, there is no ground for the admission of expert testimony, and the general tendency of the courts appears to have been to exclude it, unless it clearly appears that it is essential to a full and fair presentation of the case and will aid the trier of fact in dealing with it. "It has been said of expert testimony: 'It is not desirable in any case where the jury can get along without it, and is only admitted from necessity, and then only when it is likely to be of some value.' 'The evidence of experts is of the very lowest order and the most unsatisfactory character.' All testimony founded upon opinion merely is weak and uncertain, and should in every case be weighed with great caution. 'The unsatisfactory nature of such evidence is well known. The facility with which great numbers of witnesses may be marshaled on both sides of such a question, all calling themselves experts, and each anxious to display his skill and ingenuity in detecting the false or pointing out the true, and equally honest and confident that his own theory or opinion is the only correct one, and yet all on one side directly opposing all on the other, admonishes us of the fallibility of such testimony, and of the great degree of

allowance with which it must be received.' " *Jones on Evidence*, sec. 391.·

Here the witness was offered as an expert, and the testimony involved in these two exceptions is pure opinion based upon undisclosed facts which he may have observed but did not describe, but which were of such a character that they could readily have been described by him or by others.

He saw what was left of the building for the first time two days after the fire. Its appearance then could readily have been described in sufficient detail to give the court a substantially complete knowledge of its condition at that time, and with that knowledge the jury was as competent to form an opinion as to where it originated as the witness. The mere fact that his business was investigating fires gave him no greater skill in determining where the fire originated than that possessed by the ordinary man who knows as of course that wood or other inflammable material may be charred or consumed by fire. 5 *C. J.* 577.

In dealing with a similar question in *Cook v. Johnson*, 58 Mich. 437, 25 N. W. 388, it is said: "Among other witnesses sworn was Mr. Baxter, the city fire marshal, who was allowed to testify not only to what he saw on the ground the next day, but also what opinion he had of the origin of the fire, and what he heard from various persons who were there. This was improperly allowed. That officer's duties are important, and he may properly enough make such inquiries as he deems necessary to aid his own judgment. But when the rights and liabilities of private persons are in question, he cannot affect them by his opinions or conclusions, however sagacious he may be. When he testifies, he is governed by the same rules as other witnesses, and cannot give either hearsay or opinions. * * * And as for the origin and cause of a fire, it cannot, in such a case as this, be any more difficult for the jury than for a witness to make deductions from the facts shown. There is no room for expert testimony and his opinions were not receivable."

These opinions should therefore have been excluded.

378

Because of the result reached by the trial court on the evidence, we are unable to say that the errors indicated were harmless, or that they did not affect the verdict. The judgment appealed from must therefore be reversed, and the case remanded for a new trial.

> *Judgment in No. 51 reversed, and case remanded for a new trial.*
> *Appeals in Nos. 52, 53, and 54, dismissed.*

BOND, C. J., concurs in the result.