# SISK *v.* STATE

[No. 320, September Term, 1962.]

156

*Decided June 27, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, MARBURY and SYBERT, JJ.

*John Paul Rogers* for the appellant.

*Jacques E. Leeds, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney for Baltimore City,* and *Alfred J. O'Ferrall, III, Assistant State's Attorney,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

After conviction of, and sentence for, obtaining money by means of a false pretense under Code (1962 Cum. Supp.), Article 27, § 140, James T. Sisk appeals.

The questions involved are whether a Regiscope photograph was properly admitted into evidence, and if not, was its admission prejudicial.

At the trial below, the State offered a Mr. William Sraver, chief investigator for the Protection Department of Montgomery Ward Company, Inc. (the Company). He stated that his "record" showed that a check was cashed in "our store" on August 1st, 1962, drawn by Talbott & Hanson, Inc., made payable to Charles A. Neubert, Jr., dated August 1st, drawn on the Maryland Trust Company, and signed by Frank G. Hanson and Anna P. Myers. The check was endorsed "Charles A. Neubert, Jr." It was not honored, but returned to the Company.

Sraver explained that when cash is requested for a check, the Company takes a picture with a Regiscope machine. These machines operate in the following manner. A number stamp

places numbers in sequence on the checks. After a number is stamped on a check, a picture is taken of the check, the identification used by the person having the check cashed and the individual cashing the check, simultaneously. This is accomplished by means of a two-lens camera, located in the cashier's cage, which takes two pictures at one time, one straight down at the check and identification, and the other pointing out, taking a picture of the individual cashing the check. When five hundred films have been used or there is current need for a picture, whichever first occurs, the film is removed from the camera by Sraver, and sent by mail to the Regiscope Company in Fairfax, Virginia. Upon request, the films are developed and the pictures of individual transactions are sent to the Company. Sraver was not present when the photograph in the instant case was taken by a cashier, or when the film was developed by Regiscope. He, therefore, stated that he was not "in a position to say whether the picture [was] a correct likeness of what was in front of the camera" at the time the picture was taken. He also stated that he supposed it was "within the realm of possibility" that the same check could have been exposed with six different persons in front of the camera, from time to time, if the cashier had so desired. The appellant admitted to the police that the individual on the photograph was he, but he denied cashing the check. Without further authentication, the photograph of appellant, the check he allegedly cashed and the identification purportedly used by him was admitted over his objection. And this was all the evidence produced against him, except, as noted above, his admission to the police that he was the individual pictured on the exhibit.

Although the taking of a picture by the Regiscope operation is more complicated than the taking of an ordinary photograph, we see no reason why the admissibility of a picture taken by such an operation should not be governed by the same principles as those governing ordinary pictures. A photograph, like a map or diagram, is the witness' pictured expression of the data observed by him and therein communicated to the tribunal more accurately than by words says Professor Wigmore. 3 *Wigmore, Evidence* (3 Ed.) § 792. Generally, a photograph's admissibility as evidence is left to the discretion of the trial court,

but it is obvious, even if we take at full value appellant's admission that the individual was he, that the portion of the picture taken straight down had no testimonial sponsor. And the rule that the admissibility of photographs is ordinarily left to the discretion of the trial court does not come into play until there is competent extrinsic evidence showing the photograph to be a true representation of the scene or object which it purports to represent at the time when the appearance of such scene or object is relevant to the inquiry in connection with which the photograph is offered. *Smith v. State,* 182 Md. 176, 187, 32 A. 2d 863; *Wimpling v. State,* 171 Md. 362, 373, 189 A. 248; *Corens v. State,* 185 Md. 561, 570, 45 A. 2d 340; *Cook v. State,* 225 Md. 603, 171 A. 2d 460. Cf. Annotation in 9 A.L.R. 2d 899; *Consolidated Gas, E. L. & P. Co. v. State,* 109 Md. 186, 72 A. 651; *McCormick, Evidence,* p. 387; *State v. Tatum,* 360 P. 2d 754 (Wash.). At no time was the exhibit shown by extrinsic evidence to be a fair representation of the scene that it purported to represent; hence it should not have been admitted. And there can be little doubt that its admission was prejudicial. As we pointed out above in our statement of the facts, it was the only evidence that connected him with the alleged offense. Of course, it may be possible for the State in the new trial ordered to authenticate it properly.

Appellant also raises the contention that the taking of his picture was an invasion of his right of privacy. The short, but complete, answer to this is that notice that the picture was being taken was displayed in large letters on the camera only three feet in front of appellant.

*Judgment reversed, and case remanded for a new trial.*