Jim **WILLINGHAM**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–75–420.

Court of Criminal Appeals of Oklahoma.

Feb. 3, 1976.

Rehearing Denied May 20, 1976.

Michael W. Mitchel, Annis & Moore, Woodward, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

The appellant, Jim Willingham, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court of Ellis County, Case No. CRF–73–13 of the crime of Forgery in the Second Degree. Punishment was assessed at a term of five (5) years in the custody and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in conformance with the verdict the defendant has perfected his timely appeal.

Briefly stated the evidence adduced at trial is as follows: Jerry Edward Barnes testified that on the 13th day of August, 1973, he was working with the defendant when the defendant came out of the home of a Mrs. Rose Baysinger with a check signed by Mrs. Baysinger but not made out as to payee or amount. When the defendant got in the pickup he made the check payable to Jerry Barnes in the amount of $700.00. He then asked the witness to cash same because the defendant did not have an Oklahoma driver's license and Barnes did. Barnes agreed to cash the check, did so and gave the money to the defendant. The witness identified State's Exhibit 1 as the check in question. On cross-examination Barnes admitted that he had initially been charged as a co-defendant and stated that he had made no deal with the prosecution in exchange for his testimony. He further stated that he had never been in the Baysinger home and that he received no part of the proceeds unless they were used to pay his wages at a later date. He admitted that at the time he cashed the check his endorsement reflected his old residence of Woodward, Oklahoma, when in fact he was then living in Texas.

Mrs. Rose Baysinger testified that she lived near Shattuck, Oklahoma, and that she knew the defendant and Jerry Barnes because they had sprayed the outside of her house for termites. She made an in-court identification of the defendant and stated that her signature appeared on State's Exhibit No. 1. She further testified that she did not make the check out for $700.00 nor to Jerry Barnes and that she gave the signed but incomplete check to the defendant. After being reminded by defense counsel of her testimony at the preliminary hearing she then stated that she recalled having signed the check and the phone then ringing. She left the defendant with

the signed instrument and answered the phone. When she returned the defendant and the check were gone. The State then rested.

The defendant testified that he did not know Rose Baysinger, had never been in the Baysinger home, had never given a check for $700.00 to Jerry Barnes, and that he had never worked in the Arnett area although he was in the termite business. The defendant's wife then testified that to her knowledge her husband had never worked in the Arnett area.

■ The defendant's first assignment of error urges that the verdict is in such a form that the trial court must speculate or guess as to the jury's intentions as to length of punishment and that the verdict is thereby too indefinite to sustain the judgment. The verdict referred to is in the following form:

"We, the jury, upon our oath, find the defendant guilty of the crime of Forgery, Second Degree. We assess his punishment at five (5) years."

We find nothing indefinite about the verdict or the punishment assessed. It is apparent from the face of the verdict that the defendant was found guilty of Forgery in the Second Degree and his punishment was assessed at a term of five years. The defendant's first assignment is without merit.

■ The defendant next contends that the trial court committed reversible error when he introduced the attorneys and the defendant, by name, to the jury panel and in the presence of Rose Baysinger when it should have been obvious to the trial court that Mrs. Baysinger, an elderly woman, would have difficulty making an in-court identification of the defendant. With this contention we cannot agree.

The introduction of the defendant by name was relevant to the voir dire of the jury. The introduction by name in no way intimated to the jury or to Mrs. Baysinger that the defendant was in fact the man who was allegedly in her home and disappeared with the check. Defense counsel was allowed wide latitude in his cross-examination of Mrs. Baysinger in effort to shake her in-court identification of the defendant. No pre-trial motion or motion in limine was made by the defense. For the reasons set out above we feel that no substantial right of the defendant was prejudiced by the action of the trial court and that the defendant's second assignment is without merit.

■ The defendant's third assignment of error urges that there is insufficient evidence to support the verdict. Again we do not agree. There are three essential elements of forgery: a false writing or material alteration of an instrument; the instrument as made must be apparently capable of defrauding, and there must be intent to defraud.

■ Mrs. Baysinger testified that the defendant disappeared with the signed but incomplete instrument. Barnes testified that the defendant filled in the check as to party and amount, asked that he cash same and received the proceeds. This amounts to a false writing and a material alteration of the instrument. The instrument as completed was certainly capable of defrauding since the check was in fact cashed.

In *Hurley v. State,* 416 P.2d 967, this Court held that the question of guilty knowledge, and whether there was an intent to defraud, are questions of fact for the jury to decide under the circumstances, and may be inferred from what the accused does and says, and from all the facts and circumstances involved in the transaction. In the instant case the testimony of Mrs. Baysinger and Barnes indicates that the defendant disappeared with the incomplete instrument, immediately filled it out, had it cashed by an unwitting associate and received the proceeds. The question of intent to defraud is for the jury to determine.

■ Defense counsel urges that Barnes was an accomplice and his testimony must be corroborated. Although we do not

agree with the defense that Barnes was, as a matter of law, an accomplice, it is our opinion that the testimony of Barnes was sufficiently corroborated by the testimony of Mrs. Baysinger connecting the defendant with the disappearance of the signed instrument.

For all the reasons set out above it is therefore our opinion that there was sufficient evidence presented at trial to support the verdict of the jury. We have repeatedly held that this Court will not reverse a conviction for insufficiency of evidence, if there is substantial evidence, although circumstantial, from which a reasonable and logical inference of guilt arises. See *Billey v. State,* Okl.Cr., 381 P.2d 160. The defendant's third assignment is without merit.

■ The defendant's last assignment of error contends that the prosecuting attorney made certain statements during an attempt to introduce evidence, which statements prejudiced a substantial right of the defendant by inferring that the defendant had forged other checks. The incident complained of appears in the record as follows:

"Q. Did you ever work for Sampson Termite?

A. For Sampson Termite?

Q. Yes.

A. Yes, sir.

Q. When you worked for them did you work out in the Shattuck area, north of Shattuck, or anywhere in that area?

MR. MITCHEL: He has asked that question.

A. Not to my knowledge, no sir.

THE COURT: Overruled.

MR. MITCHEL: Exception.

Q. Let me hand you a piece of paper and maybe it will refresh your memory, and ask you to take a look at that.

Would you tell the court and jury what that is?

MR. MITCHEL: We will object to that unless some foundation has been laid, until some foundation is laid and that check is admitted in evidence.

THE COURT: Overruled.

MR. MITCHEL: Exception.

Q. Do you know what that is?

A. It is a piece of paper.

Q. What does it say?

A. It says Sampson.

MR. MITCHEL: That is a piece of paper with some figures on it that has been stapled together. It is not the best evidence. Anyone can make a copy of this and can say this and this, and staple it together.

MR. BARTON: He can deny it.

THE COURT: Overruled. The only question is can he identify it, and the only answer is yes or no.

A. It looks like paper stapled together with Sampson Termite on it.

Q. Who is that signature down there on the bottom? Whose name is that down there?

A. I don't know.

Q. You can't read that, can you?

A. No.

Q. Would you turn over on the back and see if there is any written— any writing on the back?

MR. MITCHEL: Again I don't believe the check has been identified for any purpose.

MR. BARTON: I am asking if there is any writing on the back.

THE COURT: Overruled.

MR. MITCHEL: Exception.

A. There is some blurry writing on the back.

Q. Can you tell what it is?

A. About an S and a P here, and a J is all I can tell what is on it.

Q. Do you wear glasses Mr. Willingham?

A. No, sir.

Q. Do you need glasses to read?

A. Not that I know of.

MR. MITCHEL: We will object to that.

THE COURT: Let's stick to the question.

MR. BARTON: He says he can't read that.

Q. Could that be Jimmy Willingham on the back?

MR. MITCHEL: At this time I will move for a mistrial for an overt statement before the jury. He asked him if Jimmy Willingham's name appeared on the back of this check. It is not in evidence.

THE COURT: Overruled. Is that a fact, he can answer it yes or no.

MR. MITCHEL: Exception.

Q. Just an answer yes or no. Does the word Jimmy Willingham appear on the back of that piece of paper?

A. I can't make out Jimmy Willingham on it.

Q. But there is something there?

A. There is something there? There is something there but I don't know what it is.

Q. You have never seen a copy of this instrument before, anything that looked like this, or resembled it?

A. No, sir.

MR. BARTON: Comes now the State and offers this piece of paper into evidence.

THE COURT: Have you shown it to the defense counsel?

MR. MITCHEL: We have seen it, Your Honor. We will object to the introduction of a piece of paper that has no bearing on the trial, and no relationship shown by any of the witnesses presented so far. As stated by the District Attorney himself, it is nothing but a piece of paper.

THE COURT: We will let the record show that State's Exhibit No. 2 was offered, and not admitted into evidence.

MR. BARTON: Let the record show the State excepts."

From the above it is apparent that the State was attempting to prove that the defendant had in fact worked in the Shattuck or Arnett area by introducing a piece of paper to refresh his memory. The State did not mention the fact that the piece of paper was a check, defense counsel did. Defense counsel cannot now be heard to complain. We find no error and defendant's last assignment is without merit.

After an examination of the record we find that the defendant received a fair and impartial trial before a jury, that no substantial right of the defendant was prejudiced and that the judgment and sentence appealed from should be, and the same is hereby *affirmed*.

BRETT, P. J., and BUSSEY, J., concur.