**Holden DUNFORD, Jr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–79–323.**

Court of Criminal Appeals of Oklahoma.

Aug. 4, 1980.

Demetri Anastasiadis, Asst. Public Defender, Oklahoma County, for appellant.

Jan Eric Cartwright, Atty. Gen., Timothy S. Frets, Asst. Atty. Gen., William Brad Heckenkemper, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge.

The appellant was convicted of Forgery in the Second Degree, After Former Conviction of a Felony, in the District Court of Oklahoma County, Case No. CRF–78–3025. On appeal he has raised four assignments of error pertaining to impeachment by prior conviction, improper instruction of the jury, improper communications with the jury and insufficiency of the evidence. We affirm.

For purposes of clarity, we will first discuss the second assignment of error, which is that the evidence was insufficient to sustain the conviction. The appellate test of sufficiency is whether or not the State presented a prima facie case. *Garrett v. State*, Okl.Cr., 525 P.2d 1238 (1974); *Hunt v. State*, Okl.Cr., 601 P.2d 464 (1979). The elements of forgery are the existence of a false or materially altered writing, which is

capable of defrauding innocent parties and which is passed with the intent to defraud. Title 21 O.S.1971, § 1577; *Willingham v. State*, Okl.Cr., 549 P.2d 350 (1976). The following summary of evidence demonstrates that the State presented sufficient evidence on each of the elements to justify submitting the case to the jury:

1. Checks were discovered missing by the Oklahoma Tile Company.

2. One of the missing checks was cashed at the Buerger Brothers Grocery Store.

3. The Oklahoma Tile Company employee, by whom the check was purported to have been signed, testified that the signature on the check was not his.

4. The State presented a record of the transaction made by a Regiscope—a device which simultaneously photographs the check being presented, the person presenting it and that person's identification.

5. A handwriting expert compared the signature on the check to samples executed by the appellant. His opinion was that the appellant had forged the signature on the check.

■ The appellant challenges the State's case in two respects. The first is that he allegedly had an injured hand when he executed the samples, so that the samples had no validity. The appellant raised the issue during cross-examination of the expert in his attempts to impeach the expert's testimony, and the whole question was one for the jury to decide since the circumstance of the injured hand went to the weight and credibility of the expert's opinion rather than its admissibility.

■ The other argument made by the appellant is that the Regiscope is inherently unreliable and that the picture made by it should not have been admitted. The appellant cites *Sisk v. State*, 232 Md. 155, 192 A.2d 108 (1963), in which a Regiscope photograph was held inadmissible. The appellant in that case conceded that he was the person in the Regiscope photograph, but denied cashing the check. The witness who testified about the Regiscope had not been present for the transaction in question.

The Maryland Court of Appeals concluded that the photograph was not sufficiently authenticated to merit admission.

In the present case, on the other hand, the store employee who made the Regiscope photograph of the transaction in question took the stand. He explained how the Regiscope works, related the store's practices in using the device, and identified the check in question as one which he had cashed. He admitted that he had no recollection of the appellant apart from the Regiscope photograph and that it was within the realm of possibility for the person using the Regiscope to photograph the check and identification from one transaction with the person from another.

The appellant puts great stress on these latter admissions, asking us to follow *Sisk* and strike the Regiscope photograph in this case. *Sisk* is not in point, however. The witness in the present case testified to the store's practices, saying that he invariably followed those practices. He was then cross-examined extensively on the possibility of mistake. We hold that the photograph was sufficiently authenticated to be admitted, and the weight to be given it was a question for the jury under all the facts and attendant circumstances. This assignment of error is without merit.

■ Moving to the fourth assignment of error, the appellant argues that there should have been an instruction on circumstantial evidence. Such an instruction is required only if the State's case is entirely circumstantial—*Baker v. State*, Okl.Cr., 593 P.2d 100 (1979). As named above, the elements of forgery are:

1. That there was a false writing—there was direct testimony by witnesses that the check was false.

2. That the writing was capable of defrauding innocent parties—the evidence was that the check did in fact defraud the store owners.

3. That the writing was passed with an intent to defraud—the Regiscope photograph was direct evidence that the appellant used another man's name and

presented another man's identification in cashing the check. A justifiable inference from this evidence is that the appellant had the intent to defraud the grocery store owners.

From this discussion of the evidence, it can be seen that there was no need for a circumstantial evidence instruction.

██ In his first assignment of error the appellant complains that the trial court made an improper ruling regarding impeachment of him as a witness. Since he did not take the stand the issue is moot; but a brief discussion may be in order to aid parties in the future. The appellant's former conviction was also for forgery; and he wanted the trial court to prohibit the State from impeaching him with this conviction. Both the State and the appellant cite 12 O.S.Supp.1979, § 2609. The appellant contends that paragraph A.2 of the section is applicable and that it was error for the trial court to refuse to weigh the probative value of the conviction against its prejudicial effect. The State urges that paragraph A.1 of the section is applicable, and that no balancing was needed to hold the conviction admissible. Obviously, the commission of forgery involved "dishonesty or false statement." The State's argument is correct. This assignment is without merit.

██ Finally, the third assignment alleges prejudicial conduct with regard to the jury. Sometime during the jury's deliberations the bailiff was called to the jury room and informed that the jury was at an impasse. Apparently acting on the judge's instructions, the bailiff asked the jury for a numerical count. (" 'We have ten and one and one abstaining.' ") One juror, however, said she did not believe there was an impasse. The bailiff then left the room.

The appellant contends that this conversation constituted reversible error. In *Burton v. United States*, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482 (1905), and *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), the United States Supreme Court expressly held that a judge may not ask a jury how it stands. But the

Supreme Court has never had an occasion to say whether that rule is constitutional or supervisory. *Ellis v. Reed*, 596 F.2d 1195 (4th Cir. 1979), has a thorough discussion of the subject, indicating that both the circuits and the states are split on the question. This Court has allowed such questioning in the past—see, for instance, *Joyner v. State*, Okl.Cr., 484 P.2d 560 (1971)—and will continue to do so in the future. It would be improper to ask the jury toward what verdict they were leaning, but a knowledge of the numerical count can often help a trial court decide whether further instruction or even a mistrial is in order.

The judgment and sentence is *AF-FIRMED*.

CORNISH, P. J., and BRETT, J., concur.