EUPHROSENIA BROWN, alias ROSA E. BROWN *vs.* STATE
OF MARYLAND.

*Abduction—Prostitution—Evidence—Appeal—Impeachment
of Witness.*

Where in a trial for enticing a girl under eighteen years of age,
from the custody of her parents for the purposes of prostitution,
it appeared that the girl was brought to the house of the traverser
by a man, and that as soon as the traverser saw her, she ex-
claimed, "you are nothing but a child," and the latter replied,
"I am no child, and I am over eighteen years of age;" and it
appeared that the traverser was the keeper of a bawdy house—it is
competent for the defendant, for the purpose of rebutting the pre-
sumption arising from the character of her house, and the youth
of the prosecutrix, that she was enticed there, to show that the
defendant permitted the girl to remain at her own request, and
for the purpose of getting a home for her in that town; and that
on the next morning she did make an effort to procure such
home for her; and that the girl during the time she remained in
the house of the traverser did not have illicit intercourse with
any man.

In such a case, as bearing upon the question of enticement or persua-
sion, the character of the prosecutrix for chastity, and the fact
that she was "a girl of the town," are admissible in evidence.

Whether a witness who has been examined in chief, cross ex-
amined, and then re-examined, and has left the stand, shall be
recalled for further examination, rests entirely within the dis-
cretion of the trial Court, and from the exercise of which no
appeal will lie.

Where it is sought to impeach a witness by proof of prior con-
tradictory statements, he must first be interrogated as to the time
when, the place where, and the person to whom, such statements
were made.

APPEAL from the Circuit Court for Frederick County.

The case is stated in the opinion of the Court.

*First Exception.*—The traverser's counsel, on cross-examination of the mother of the prosecutrix, asked the following question :   " Did you not tell Mrs. Brown that you had tried to get a service place for your daughter in Boonsboro', but could not do so on account of her bad character?"   The State objected to the asking of the question, and the Court (McSHERRY, C. J., and LYNCH and VINSON, A. J.) sustained the objection.   The traverser excepted.

*Second Exception.*—The same witness was asked the following question :   " Did you not tell Mrs. Brown that if she could not secure a service place for your daughter in Frederick by Monday following, to send her to the Boonsboro' toll-gate ; this interview having taken place about a week after Cora went to Mrs. Brown's?"   The State objected to the question, and the Court sustained the objection ; and the traverser excepted.

*Third Exception.*—On cross-examination, the traverser's counsel propounded the following question to the prosecutrix :   " Did you not, before you went to Mrs. Brown's, attend a party at Mrs. Sinclair's, where you all became intoxicated, and boys and girls together strayed out into the mountain late at night?"   To the asking of which question the State objected, and the Court sustained the objection.   The traverser excepted.

*Fourth Exception.*—The counsel for the traverser asked the same witness the following question :   " Did you, at any time prior to coming to Mrs. Brown's, have sexual intercourse with one Charles Hutzel?"   To this question the counsel for the State objected, and the Court sustained the objection, and the traverser excepted.

*Fifth Exception.*—The traverser propounded to the same witness the following question:   "Why did you remain at Mrs. Brown's?"   The State objected, and the

Court sustained the objection, and the traverser excepted.

*Sixth Exception.*—The traverser proved by Clarence Nelson that he knew Cora Laypold and the traverser, and then asked the witness the following question: "Do you know whether Mrs. Brown tried to secure a service place the next morning after she (Cora) came to Mrs. Brown's house?" To this question the State objected, and the Court sustained the objection. The traverser excepted.

*Seventh Exception.*—The traverser further proved by Susan Crone that she knew traverser and Cora Laypold; that she lived at traverser's house during Cora's stay there. The traverser then propounded to witness the following question: "Did Cora Laypold ever have sexual intercourse with any man whilst at Mrs. Brown's house?" To this question the State objected, and the Court sustained the objection, and the traverser excepted.

*Eighth Exception.*—The traverser recalled John Groff, after he had been examined, cross-examined and re-examined, and after other witnesses had been examined, to examine him relative to new matters of information coming to the knowledge of traverser since his former examination, and also for the purpose of impeaching Charles Thompson, one of the State's witnesses, but was' prohibited by the Court from further examining said witness. The traverser excepted.

*Ninth Exception.*—The traverser recalled Clarence Nelson, who had been previously on the stand, and had been examined, cross-examined and re-examined, for the purpose of impeaching Charles Thompson, one of the State's witnesses, but was prohibited by the Court from recalling said witness for said purpose. The traverser excepted.

*Tenth Exception.*—The traverser proved by Mrs. William Laypold that she was the aunt of Cora Laypold; and

Brown *vs.* State.

then propounded to witness the following question: "Did Cora at any time admit to you that she went to Mrs. Brown's of her own accord?" The State objected, and the Court sustained the objection, and refused to permit the question to be asked and answered, no grounds having been laid in the examination of the witness, Cora Laypold, to admit said question. The traverser excepted.

*Eleventh Exception.*—The traverser, propounded to the same witness, Mrs. William Laypold, the following question: "Do you know the reputation of Cora Laypold for chastity prior to her going to Mrs. Brown's?" To this question the State objected, and the Court sustained the objection, and the traverser excepted.

*Twelfth Exception.*—The traverser then proved by herself that she did not send Charles Thompson for Cora Laypold; she remonstrated with Thompson when he came with the girl to her house, and said to him: "Why did you bring that child here;" that Cora said, "I am no child, I am eighteen years of age;" that she cried and asked traverser to keep her; that she had tried to secure a service place in Frederick for Cora; that on her failure to do so she had gone to Boonsboro' to see Cora's mother about a week after Cora reached the house of witness. Counsel for traverser then asked the witness the following question: "What was your purpose in going to Boonsboro'?" The State objected, and the Court sustained the objection, and the traverser excepted.

*Thirteenth Exception.*—The traverser was asked by her counsel the following question: "Did Cora Laypold have sexual intercourse with any man while she was in your house?" The State objected, and the Court sustained the objection, and the traverser excepted.

*Fourteenth Exception.*—The traverser propounded on cross-examination to Charles Thompson, a witness for the

State, the following interrogatories, and received the following replies:   "Q. Did you tell Mrs. Brown when you brought Cora to her house, that she was your girl?   A. No, sir.   Q. That you were going to live with her?   A. No, sir.   Q. Did you ever tell any one else that?   A. No, sir.   Q. Did you have a conversation with Clarence Nelson next day, when you were moving some furniture, and did you not tell him you had brought Cora yourself on your own hook, and that she was your girl?   A. No, sir.   Q. Did you not also tell Lewis Bruchey?   A. No, sir.   Q. Did you not also tell Tom Smith the same?   A. No, sir."

The traverser, then for the purpose of contradicting said Thompson, called said Bruchey and Tom Smith, and propounded to each of them the following question, to wit:   "Did you have any conversation with Charles Thompson on the day after he brought Cora Laypold to Mrs. Brown's?"   To which each gave an affirmative answer.   The traverser then propounded the following question to each of said witnesses,   "What was that conversation?"   To this question the State objected, and the Court sustained the objection, because no foundation was laid in the examination of Thompson as to the time or place when and where the alleged conversations between him and Bruchey and Smith took place.   The traverser excepted.

The jury having rendered a verdict of "guilty," the traverser took this appeal.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, BRYAN, and FOWLER, J.

*William Wilcoxon,* and *Charles F. Markell,* for the appellant.

*Edward S. Eichelberger, State's Attorney for Frederick County,* for the appellee.

Brown. *vs.* State.

ROBINSON, J., delivered the opinion of the Court.

The traverser was indicted under section 1 of Article 27 of the Code, for enticing and persuading one Cora Laypold, a girl under eighteen years of age, from the custody and control of her parents "for the purposes of prostitution."

At the trial below, quite a number of exceptions were taken, all of which however relate to the admissibility of certain evidence offered by the traverser. As to the first five ·exceptions, it is sufficient to say that the evidence was altogether irrelevant, and was therefore properly excluded. We cannot agree, however, with the Court in regard to the evidence offered in the sixth exception. The question before the jury was whether the traverser had enticed or persuaded the prosecutrix from the custody and control of her mother, for the purposes of prostitution. The language of the statute is, any one who shall "persuade or entice from her usual place of abode, or from the custody and control of her parents," &c. If the prosecutrix went to the house of the traverser of *her own accord, and without* any prompting or inducement on the part of the accused, then the indictment must fail. In *Reg. vs. Olifier*, 10 *Cox's Crim. Cases*, 403, where the traverser was indicted under 24 and 25 Victo., ch. 100, sec. 55, which provides "·that whosoever shall unlawfully take or cause to be taken, any unmarried girl, being under the age of sixteen years, out of the possession and against the will of her father or mother, or of any other person having the lawful care or charge of her, shall be guilty of a misdemeanor," BRAMWELL, B., said: "I am of opinion that if a young woman leaves her father's house without any persuasion, inducement, or blandishment held out to her by a man, so that she has got fairly away from home, and then goes to him, although it may be his moral duty to return her to her parent's custody, yet his not doing so is no

infringement of this Act of Parliament, for the Act does not say he shall restore her, but only that he shall not take her away."

Or if the prosecutrix went with the consent of her mother, or went for any purpose, other than the purposes of prostitution, the traverser was not guilty under this Act. Any evidence, then, which would aid the jury in determining these questions was admissible. In support of the charge as laid in the indictment, the State proved that the traverser was the keeper of a bawdy house in Frederick City, and that the prosecutrix was a girl about sixteen years of age, living near Boonsboro, in Washington County; that she was brought to the house of the traverser by one Charles Thompson, that as soon as the traverser saw _         · ¹ "you are nothing but a child," to which the latter ₁ᴜₚ₋      *I am no child*, and am *over eighteen years* of age." The traverser then sent for a conveyance, for the purpose of sending the girl home, and thereupon she began to cry, "and said she did not want to go home," and begged the traverser to let her stay, till she could get a place of service in Frederick. Now, in view of these facts, the evidence offered by the traverser, to show that, on the morning after the girl's arrival, she made an effort to get a home for the girl in Frederick, ought to have been admitted. The fact that the traverser was the keeper of a bawdy house was in itself *prima facie* evidence, that the girl was brought to her house, and permitted to remain there for the purposes of prostitution; and to rebut this, it was clearly competent for the traverser to show, that she permitted the girl to remain there at the request of the latter, and for the sole purpose of getting a home for her in Frederick; and that on the next morning she did in fact make an effort to get her a home. Whether the effort was made in good faith, or for the purpose of concealing the real motives of the traverser in permitting

the girl to remain in her house, were questions for the jury. For the same reason, it was competent for the traverser to prove that during the time the girl remained in her house, she did not in fact have *sexual intercourse* with any one, and the evidence offered to that effect in the seventh and thirteenth exceptions ought to have been admitted. Now, as to the eighth and ninth exceptions, it is sufficient to say, that after a witness has been examined in chief, and then cross-examined and then re-examined, and has left the witness stand, the question whether the witness shall be re-called for further examination, is a matter resting entirely in the discretion of the trial Court. Cases may occur in which counsel have inadvertently omitted to examine a witness in regard to matters directly bearing upon the question of the guilt or innocence of the accused, and in which the Court may permit the witness to be re-called; but all this is a matter resting in the discretion of the Court, and from the exercise of which no appeal will lie.

We find no error in the rulings on the tenth and fourteenth exceptions. Where it is proposed to discredit a witness by proof of prior contradictory statements, it is well settled in this State that in order to lay the foundation for such evidence the witness must first be interrogated as to the time, place, and person to whom such contradictory statements were made. This is but fair and just to the witness, in order that he may be enabled to refresh his recollection in regard to such statements, and afforded the opportunity of making such explanations as he may deem necessary and proper.

The question raised by the eleventh exception is one of more than ordinary importance. The character for veracity of a female witness cannot as a general rule, it is true, be impeached by evidence as to her character for chastity. The impeachment must go to her general character for truth and veracity. To this rule, however, there is a well recognized exception, in cases for

Brown *vs.* State.

rape, in which the general character of the prosecutrix for chastity is, for obvious reasons, always admissible. Not that a rape may not be committed even upon a lewd and dissolute woman, but the fact that she is a lewd woman may have a material bearing upon the question whether the act was committed with or against her consent.

And for the same reason, in cases of this kind, where one is charged with enticing and persuading a girl under the age of eighteen years from the custody and control of her parents for the purposes of prostitution, her character for chastity, the fact that she was a "girl of the town," would have a material bearing upon the question whether she was enticed or persuaded from the control of her parents, or whether she went with her own accord, and with the knowledge and consent of her parents. And with that view, and for that purpose, the evidence was, we think, admissible.

Nor do we see any objection to the evidence offered in the twelfth exception. The traverser testified she did not entice or persuade the prosecutrix from the custody of her mother; that she did not send Thompson for her, and objected to her remaining in her house, and finally consented, for the purpose of getting her a home in Frederick; that she did in fact make an effort to get her a home and failing in this, she went to Boonsborough to see the girl's mother. We see no reason why she should not have been permitted to state her object and purpose in going to see the mother. All this was evidence to go to the jury, and to be considered by them in determining the question as to the motives of the traverser in permitting the girl to remain in her house.

For these reasons the rulings of the Court in the sixth, seventh, eleventh, twelfth and thirteenth exceptions must be reversed.

*Rulings reversed, and*
*new trial awarded.*