## DOUGLAS LORNELL SANDERS *v.*
## STATE OF MARYLAND

[No. 225, Initial Term, 1967.]

632

*Decided August 17, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and TRAVERS, J., Associate Judge of the First Judicial Circuit, specially assigned.

*Robert C. Heeney* and *John J. McAuliffe* for appellant.

*Edward F. Borgerding, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County,* and *Thomas A. Lohm, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On May 19, 1966, the appellant was convicted with a co-defendant, Clyde H. Bickford, of the crimes of robbery with a deadly weapon and conspiring to rob with a deadly weapon, by a jury in the Circuit Court for Montgomery County, Judge Kathryn J. Shook, presiding. He was sentenced to imprisonment for a term of ten years for each offense, the sentences to run consecutively.

On appeal the appellant contends:

1. The trial court erred in denying a motion for judgment of acquittal;

a) with regard to the offense of robbery with a deadly weapon.

b) with regard to the offense of conspiring to rob with a deadly weapon.

2. The trial court erred in preventing certain witnesses from testifying for the appellant.

We shall first consider the second contention. William Howard Clements, who was also arrested for the robbery for which the appellant was convicted and who was an admitted participant in the crime, was granted immunity by the State to testify for the prosecution. He was the State's key witness and the conviction of the appellant depended in large measure on his detailed and lengthy testimony. Sandra Lee Clements, the wife of William Howard Clements, was called by the defense to testify on behalf of the appellant. She was asked on direct examination if Clements had made any statements to her relative to the case. She answered "Yes" and objection was made to the next question, "What did he say?" The objection was overruled and the witness said Clements had made such statements when he came to their apartment in the early morning of December 23rd. At this point the trial court requested a conference at the bench. After discussion off the record, counsel for the appellant put the following proffer on the record:

> "Your Honor, I proffer to show by this witness that she would testify that on December 23, 1965, in the early morning hours following his release on personal bond that the witness, Billy Clements, came to the apartment of the witness, now on the stand, and told her he had involved innocent people and that Sanders was not guilty of anything but he had gotten off and he went along with anything the police told him."

Although the record does not disclose an objection by the State, the Court said, "All right. The objection of the State is sustained," and the bench conference was concluded. The defense called Floyd William Spong. He testified that he had a conversation about the robbery with Clements at the Dark Horse Bar in Rockville just before Christmas of 1965. When asked

what the conversation was the State objected. At the bench, defense counsel made the following proffer:

"MR. HEENEY: Your Honor, this witness would say that in the presence of Johnny Seward, Richard Mallory, Patsy Wilson, that the witness, Billy Clements, stated that Douglas Sanders had no knowledge of or any part of the robbery at the H & I or any of the charges against him and that he, Billy Clements, had only agreed to what the Detective said to save himself and that he would not face 20 years in prison if there was any way out of it and would not care if he had to make a deal to give him his grandmother to do it.

I have got to ask you something. I'm thinking about —I made a terrible mistake in this case and I think the State's Attorney is right that I should have asked first when Billy Clements was on the stand—I should have asked him these questions. I calculated wrong. It was a matter of trial strategy and I think I have calculated wrong in view of the Court's ruling and I earnestly ask Your Honor to let me correct this somehow so we don't have any criticism of me later on.

THE COURT: I don't see how they can criticize you.

MR. HEENEY: I should have asked Clements if he had made any statements to this fellow.

THE COURT: I don't see how that would have had any particular effect on the trial of the case. We haven't as yet found out what the verdict would be. I'm going to have to sustain this objection for the same reason that I sustained it as to Mrs. Clements.

MR. HEENEY: Could we do this, Your Honor. Could we call Billy Clements as the Court's witness and let me ask him that question I think that—

MR. LOHM: (Assistant State's Attorney) I object to that.

MR. HEENEY: But I have made a mistake and I want to clear it.

THE COURT: Well, we are going to go over until

tomorrow. I'll think about it. But at this point, I don't believe I could do that very lightly or whether it is proper to do it at all. I will certainly consider it and hold it off until tomorrow.

(Conclusion of bench conference.)"

It appears from the record that the objection was sustained although there is no affirmative ruling. The defense called Johnny Edward Seward. He was asked if he talked to Clements about the robbery. The witness stated that he had, on December 23, 1965. There was objection to the question as to what Clements said about the robbery.

The following took place at the bench:

"THE COURT: Is it the same proffer?

MR. HEENEY: Yes, Your Honor. This witness would testify that he talked to Billy Clements concerning this robbery and that Billy Clements had only agreed to what the Detective said to save himself and that he would not face 20 years in prison if there was any way out and I would not care if I had to make a deal to give them my grandmother to do it.

MR. LOHM: Same objection for the same reason.

THE COURT: The Court will sustain it.

MR. HEENEY: Your Honor, to save time and because we know what the ruling is going to be, I was going to call one more witness, Patsy Wilson, and Patsy Wilson would testify to the same conversation that Billy Clements had, because it was in the presence of her as well as Spong and as well as Seward and he made the same statement that Sanders was not involved in this robbery and that Clements just did it to save himself from going to prison for 20 years.

THE COURT: All right. For the same reason the Court will sustain the objection.

(Conclusion of bench conference.)"

Later in the trial, the following transpired at the bench:

"MR. HEENEY: Your Honor, after some thought trying to figure how I can cure what I feel is an error on my part, I'd like to call Billy Clements to the stand.

I think he is available and I would like the Court to, since he was the State's witness and obviously is not my witness and cannot really vouch for his testimony, I wonder if you would declare him a hostile witness. You don't have to tell the jury that, but just let me ask him this impeaching question that I should have asked.

THE COURT: What impeaching question?

MR. HEENEY: Did he have a conversation with these people that I put on the stand and did he say that Sanders was in the clear?

THE COURT: That's not an impeaching question. He hasn't testified as to what he said to them.

MR. HEENEY: That's true. I could ask him that question and if he denied it, I then could produce the witnesses that I had before to ask them whether or not—

THE COURT: —I don't think you could ask that question. I think you would have to call him as your witness and ask him if he had a conversation with these people and then what they said.

MR. LOHM: I object to this. Before you can impeach a witness you have to be surprised and he is going to put Billy on the stand knowing what he is going to say but expecting him to say things that would be contrary to what his own witnesses are going to say.

THE COURT: I think you have to take a chance and call him as your witness.

MR. LOHM: Your Honor, I'm going to take advantage of Article 35. When he produces a hostile witness he is bound by what he says under these circumstances and—

MR. HEENEY: Don't you understand what I am saying. I made a mistake in the trial of this case and I'm doing my best to cure it so justice could be done with these Defendants.

MR. LOHM: I have all the sympathy in the world for you, but I have none whatsoever for your client. I'm going to try this case according to the rules.

THE COURT: This does raise a serious question. When Mr. Lohm tried to elicit from Miss McCaffrey a statement similar to the one you are attempting to elicit from the three witnesses that you produced and did not testify, you objected and the Court sustained that objection. Now, if Mr. Lohm objects, I would have to seriously consider as to whether or not I should sustain that objection in view of the fact I sustained yours.

MR. HEENEY: I'm not quite clear, Your Honor, what that was.

THE COURT: You recall that Miss McCaffrey was asked on cross-examination, I believe by you,—on direct examination by Mr. Lohm, if she had a telephone conversation with Sanders or Clements. My recollection falters here.

MR. LOHM: Sanders in Baltimore. She had a conversation with Sanders in Baltimore on a couple of occasions.

MR. HEENEY: I don't see how I could have objected to that.

THE COURT: It may have been with Clements. I believe it was with Clements and you objected.

MR. HEENEY: I'm sure I would have.

THE COURT: And the Court sustained the objection because it was out of the presence—it was hearsay as to your client so I think you have to take your chances.[1]

---

1. The transcript of the proceedings discloses that it was not counsel for appellant who objected. On direct examination of Sandra McCaffrey by the State she was asked if she had a conversation with the appellant about the robbery. She testified that such conversation took place the first part of October. In response to a question what the appellant said she replied that he told her "* * * they had pulled the job and at that time I was given the gun that was used in the job because he didn't want it in his possession." She was then asked, "Who did he say was they that pulled the job? Did he name anybody?" Counsel for the co-defendant, Bickford, objected on the basis it was out of the presence of his client and not admissible at that time. After a conference at the bench,

MR. HEENEY: I'll call Billy Clements.
THE COURT: Call the jury back.
(Conclusion of bench conference.)"

Defense counsel then called William Howard Clements. The record discloses the following:

"THE COURT: Ladies and gentlemen of the jury, this will be a direct examination in as much as counsel for Mr. Sanders has called this witness.
(Bench conference as follows.)
MR. HEENEY: Your Honor, in view of your remark you just made to the jury, I do want the record to show that the reason I am calling Mr. Clements is because I forgot on cross-examination to ask him what I consider to be a very important question. That's why I am calling him now.
(Conclusion of bench conference.)"

The witness testified that he knew Johnny Seward, Floyd Spong and Patsy Wilson. The record then shows as follows:

"Q. (Mr. Heeney) On December 23, 1965, did you have a conversation with the three of them concerning the H & I robbery?
MR. LOHM: Objection.
THE COURT: Just answer yes or no.
THE WITNESS: I don't remember if I did or not.
Q. (by Mr. Heeney) Did you on that date tell those people that I named that—
MR. LOHM: —I object to any further interrogation at this point.
MR. HEENEY: It is proper to object after the question is asked.

---

the State withdrew the question. Later, she testified that she had discussed the robbery with Clements. She said, "Bill (Clements) told me about the job the same thing that Doug (the appellant) told me. That Doug had engineered the job and that he had driven the car and that Clyde Bickford —". At this point it was again counsel for Bickford who objected and the objection was sustained.

THE COURT: Come up to the bench.

(Bench conference as follows.)

THE COURT: Now, I realize you are in a position of wanting to cross-examine him, but you may not because he is your witness and he has answered the questions and does not remember having the conversation. That's the end of that.

MR. HEENEY: Could I bring back those other witnesses and state there was a conversation and what that conversation was?

THE COURT: It would be objectionable as it was before you called him to the stand.

MR. HEENEY: Unfortunately, I know that to be true and now what I am trying to do is to cure my mistake.

THE COURT: You may have gotten that same answer if you asked it on cross-examination and you'd be in the same position. So your record is clear now.

MR. HEENEY: You don't think that if I had gotten that answer on cross-examination that I would have been permitted to produce these witnesses and ask them the question?

THE COURT: No, not if he doesn't remember."

With regard to the second contention, it is necessary to review the principles of law pertaining to the impeachment of witnesses by proof of contradictory statements. Provided a proper foundation has been laid, the credit of a witness may be impeached by showing he has made statements which contradict his testimony in respect to material facts (but not in respect to facts that are collateral, irrelevant or immaterial). *Davis v. State,* 38 Md. 15; *Joppy v. Hopkins,* 231 Md. 52, 56 and cases cited; *Kantor v. Ash,* 215 Md. 285, 290; *Mahan v. State,* 172 Md. 373, 380. To lay the foundation for such evidence, the witness must be first interrogated as to the time, place and person to whom such contradictory statements were made. *Brown v. State,* 72 Md. 468. As the Court said in *Brown* at page 475:

"This is but fair and just to the witness, in order that he may be enabled to refresh his recollection in re-

gard to such statements, and afforded the opportunity of making such explanations as he may deem necessary and proper."

See also *O'Brien v. State,* 126 Md. 270, 285; *Baltimore Transit Co. v. Castranda,* 194 Md. 421, 439. The witness, whether a party to the suit or not, may be cross-examined on such matters and facts, and the proper foundation having been laid, the proof of prior contradictory statements can be submitted for the consideration of the jury in estimating the credit to be given the testimony of the witness. *Leister v. State,* 136 Md. 518, 523; *Moxley v. State,* 205 Md. 507, 516-517; *Campbell, etc. v. Patton,* 227 Md. 125, 141. If in laying the foundation, the witness denies making the designated statement or states that he does not remember whether he did or did not make it, impeaching testimony can be offered. *Moxley v. State, supra,* at page 516. See also *Myers v. State,* 137 Md. 482, 490, in which it was held that it was permissible to prove that on a prior occasion the witness had admitted certain facts, although when asked about them did not deny them but said he was unable to recall them. In *Harris v. State,* 237 Md. 299, cited by the appellant, the Court said at page 302:

> "The general rule is that a witness may be contradicted or impeached by other witnesses on such matters and facts (except in respect to matters and facts that are collateral, irrelevant or immaterial) as are likely to affect his credibility. Likewise a witness may be cross-examined for the same purpose."

We do not construe *Harris* to mean that the credit of a witness may be impeached by proof of contradictory statements without a proper foundation first being laid. In *Harris,* there was no contradictory statement made by the witness sought to be impeached but merely a conflict in the evidence, he having stated one thing as a fact and other witnesses having stated to the contrary. See *Smeak v. Perry,* 175 Md. 73, 86. If the witness sought to be impeached was called by the party seeking impeachment, the general rule is that a party may not impeach his own witness by proof of prior statements which are incon-

sistent with, or contradictory to, his testimony at the trial. *Sellman v. State,* 232 Md. 344, 348. Many law writers severely criticize this rule and advocate its abolition. *Bruce v. State,* 218 Md. 87, 94. This State has recognized an exception to the rule. "[W]here a party satisfies the court that he has been taken by surprise, and that the testimony is contrary to what he has a right to expect, it is within the sound discretion of the trial court to determine whether or not proof of inconsistent statements should be permitted." Under such circumstances, the right to prove prior inconsistent or contradictory statements is limited, however, to statements made to the party calling the witness, or his attorney, or to some other person to be communicated to them, *Parker v. State,* 227 Md. 468, and the statement must involve material facts in the case, *Myerson v. State,* 181 Md. 105. See also *Sellman v. State, supra,* and cases cited; *Murphy v. State,* 120 Md. 229, 233. Proof is allowed, not for the purpose of discrediting the witness, but to contradict him and therefore afford the party calling him an opportunity to show why he called the witness. *Bruce v. State, supra,* 94-95.

It is clear in the instant case that no foundation for the impeachment of Clements had been laid at the close of the State's case. He had not been interrogated as to the time, place and persons to whom the contradictory statements had been made. Without the proper foundation, proof of the contradictory statements was not admissible. If, on the recall of Clements to the stand, Clements must be considered the appellant's witness, proof of the contradictory statements was likewise inadmissible, for the appellant could not show surprise or entrapment nor were the statements made to him or his attorney or to someone with the intention that they be communicated to either of them. The question is, therefore, whether, under the circumstances of this case, the appellant was properly precluded from laying the foundation for the admission of the contradictory statements. Although counsel for the appellant failed to lay the foundation for impeachment of Clements on cross-examination of him when he was first on the stand before the close of the State's case, because of a misconception of the rules of law or evidence, inadvertence, or trial tactics which later appeared to be ill-advised, he made every attempt to remedy the matter. Counsel requested

the court to allow him to correct the situation somehow, admitting the foundation should have been laid on cross-examination of Clements, suggesting that Clements be called as the court's witness, or a hostile witness to ask him "the impeaching question," all to no avail. We think that on cross-examination of Clements, when he was first on the stand, a question whether Clements had stated at a certain time, at a certain place and to designated persons to the effect that the appellant had no knowledge of or any part in the robbery and was innocent of the charges against him, would have been manifestly proper (although the trial court indicated otherwise). As it would have been proper on initial cross-examination, it could have been accomplished by allowing Clements to be recalled for this purpose. On Clements' denial that he so stated, or on his testimony that he did not remember making such statements, proof of them would be admissible. By the rulings of the trial court, defense counsel, in a last attempt to remedy the matter, was obliged to call Clements and the trial court stated to the jury, "[T]his will be direct examination inasmuch as counsel for Mr. Sanders has called this witness." Whereupon defense counsel stated, at the bench:

> "Your Honor, in view of your remark just made to the jury, I do want the record to show that the reason I am calling Mr. Clements is because I forgot on cross-examination to ask him what I consider to be a very important question. That's why I am calling him now."

When Clements, in answer to the question of defense counsel whether he had a conversation with Seward, Spong and Wilson on December 23, 1965, concerning the robbery, said, "I don't remember if I did or not," no further interrogation or evidence on the subject was allowed by the trial court, on the basis that if the answer had been the same on cross-examination, proof of the contradictory statements would not be admissible. As we have stated, we do not agree in view of the authorities before cited. Nor do we think that, under the circumstances here, Clements was properly designated as the appellant's witness. He was called by the defense solely in an attempt to lay the

foundation for impeachment. See 98 *C.J.S.* § 477; *People v. Thomas,* 7 Ill. 2d 278, 131 N. E. 2d 35 (1955); *People v. Sandow,* 133 Calif. App. 437, 24 P. 2d 521 (1933). But in any event, we feel that under the circumstances of this case, the recall of the witness, Clements, for cross-examination to lay the foundation for impeachment should have been allowed. We feel that the appellant made clear to the trial court the action he desired the court to take within the intent of Maryland Rule, 522. In *Brown v. State, supra,* decided June 19, 1890, the Court said, page 475 with regard to the trial court prohibiting the recall of a witness for the purpose of impeaching one of the State's witnesses:

> "[I]t is sufficient to say, that after a witness has been examined in chief, and then cross-examined and then re-examined, and has left the witness stand, the question whether the witness shall be re-called for further examination, is a matter resting entirely in the discretion of the trial court. Cases may occur in which counsel have inadvertently omitted to examine a witness in regard to matters directly bearing upon the question of the guilt or innocence of the accused, and in which the court may permit the witness to be re-called; but all this is a matter resting in the discretion of the court, and from the exercise of which no appeal will lie."

However, in *Bruce v. State, supra,* decided October 28, 1958, the Court said, page 95, that the authorities are divided as to whether a witness may be recalled for the purpose of laying a foundation to impeach him. Although, in that case, the question of such recall was before the Court, it was not reached, as the State had recalled its own witness to impeach him and the action was held to be prejudicial because there was no showing of surprise or entrapment. In view of *Bruce,* and more imperatively, in the light of the present-day concept of due process of law as bearing on the right of an accused to a fair and impartial trial, we are not constrained to construe *Brown* to mean that the discretion of the trial court in such a matter can never be an abuse, regardless of the circumstances. It is within this frame of reference, as well as factually, that we distinguish the civil

case of *Born v. Hammond,* 218 Md. 184, in which it was held that the trial court did not err in sustaining an objection to a question addressed to a witness which was intended to show bias on his part. The witness had been called by the plaintiff and cross-examination had been concluded. He was recalled by the defendants. Upon the plaintiff's inquiry as to the basis of recall, a colloquy ensued during which the trial judge correctly pointed out that the witness was not a party to the suit and hence would not be called by the defendants as an adverse witness and impeached under § 9, Art. 35 of the Code. The defendants then called him as their witness and the Court held they were not entitled to impeach their own witness. Also, we note that in *Baltimore Transit Co. v. Castranda, supra,* in which the necessary foundation was not laid, the Court was careful to point out, although it was a civil matter, that, in addition, no proffer was made to inform the Court what the impeaching witness would testify to and it appeared that defendant did not sustain any prejudice by the exclusion of a question to such witness not relating to any specific statement sought to be contradicted. In the instant case, a full proffer was made and we cannot say that the exclusion of the evidence was not prejudicial. On the contrary, we find that the court's ruling with regard to this contention clearly prejudiced the appellant's right to a fair and impartial trial. The outcome of the case depended in no small measure on the credibility which the jury would accord to the witness, Clements, an admitted participant in the crime, and the appellant was entitled to the opportunity to lay the foundation for the admission of the evidence proffered and, if properly laid, to have the jury consider such evidence in its appraisal of the credibility of the witness. It was, of course, the function of the jury alone, as the trier of the facts, to weigh and determine the credibility of the witness. See *Elmer v. State,* 239 Md. 1.

We are not unaware that it is expedient to have cases tried in an orderly manner but we are also cognizant of the rights of an accused. We see no undue burden on the court or the State, under the circumstances present in this case, in preserving the rights of the accused by allowing defense counsel to correct the failure to lay the foundation for impeachment of Cle-

ments on cross-examination by recalling him for further cross-examination for that purpose. We think that the appellant must be granted a new trial.

As our holding with regard to the second contention makes it necessary that the judgments as to the appellant on each of the first and second counts of the indictment be reversed and the case be remanded for a new trial, we do not consider the first contention raised by him. However, we think it advisable, even though we do not now decide the question, to note that we entertain grave doubt that, on the record before us, the evidence was legally sufficient to sustain the conviction of the appellant as a principal in the robbery with a deadly weapon as charged in the indictment. The general rule is that a person who does not commit a felony by his own hand or by the hand of an innocent agent or is not actually or constructively present at the scene of the crime, in "close proximity or contiguity" in concert with the actual perpetrators of the offense for the purpose of assisting if necessary, or of watching and preventing interference or detection, or for the purposes of encouragement at the moment of the commission of the crime is not a principal, either in the first or second degree. Not being actually or constructively present at the commission of the crime, a person's participation by way of procurement, command and counsel constitutes him an accessory before the fact and if a person receives, comforts or assists a felon, knowing that he has committed a felony, such person is an accessory after the fact.[2] We point out that on an indictment charging a person as a principal in the crime of robbery with a deadly weapon, there can be no conviction on evidence showing that he was only an accessory, either before or after the fact. See *Clark and Marshall, Crimes,* Sixth Edition, § 8.00 and § 8.05; *Perkins on Criminal Law* (1957) Chapter 6, § 8, C2 and D1 b; *1 Wharton's Crimi-*

---

2. An accessory at common law may be made a principal by statute, as when one aids, counsels or procures another to wilfully and maliciously set fire to a dwelling house. Maryland Code (1967 Replacement Volume) Art. 27, § 6; *Wimpling v. State,* 171 Md. 362. The provisions of Code, Art. 27, § 488, establishing the maximum sentence for the crime of robbery with a deadly weapon, "or accessory thereto", do not make an accessory a principal.

*nal Law and Procedure,* (Anderson), § 107; *Camphor v. State,* 233 Md. 203; *Thornton v. State,* 232 Md. 542; *Veney v. State,* 225 Md. 237; *Vincent v. State,* 220 Md. 232; *Coleman v. State,* 209 Md. 379; *Watson v. State,* 208 Md. 210; *Wimpling v. State,* 171 Md. 362; *Davis v. State,* 38 Md. 15.

> *Judgments reversed and case remanded for a new trial.*