**HEADNOTES:**

*Arthur Coleman v. State of Maryland*, **No. 673, September Term 2017, Opinion by Battaglia, J.**

1. **PROSTITUTION – WEIGHT AND SUFFICIENCY OF EVIDENCE**
   There was sufficient evidence to support defendant's conviction for human trafficking of a minor by persuading victim to leave her home for the purpose of engaging in prostitution; defendant had told victim that he would "spoil" her and help her make lots of money if she would work as a prostitute at his "freak parties;" online advertisement of "freak party" containing victim's photograph was posted using an e-mail account associated with defendant; and defendant admitted that he had been transporting victim to a party when arrested.

2. **CRIMINAL LAW – WEIGHT AND SUFFICIENCY OF EVIDENCE IN GENERAL**
   In reviewing a question regarding the sufficiency of the evidence presented at trial, the primary question for the appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **STATUTES – INTENT**
   The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the legislature.

4. **STATUTES – CONSTRUCTION**
   A court will not add or delete language to a statute so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, nor will a court construe a statute with forced or subtle interpretations that limit or extend its application.

5. **PROSTITUTION – PIMPING, PANDERING AND PROCURING**
   Defendant persuaded victim from her "home" within meaning of human trafficking of a minor by persuasion statute; defendant's use of the term "home" was consistent with ordinary meaning of the term as referring to place where victim was currently residing.

6. **PROSTITUTION – PIMPING, PANDERING AND PROCURING**
   For purposes of human trafficking of a minor by persuasion statute, a minor can have more than one home.

7. **PROSTITUTION – PIMPING, PANDERING AND PROCURING**
   Statute prohibiting persuading or enticing a minor to leave his or her home or custody of a parent or guardian for purpose of engaging in prostitution applies to situation in which a defendant persuades a minor victim who has previously engaged in prostitution to work as a prostitute.

8. **CRIMINAL LAW –  MERGER OF OFFENSES**
   Even when the merger of sentences is not compelled by the required evidence test, for determining whether prohibition on double jeopardy requires merger of two convictions, merger may nonetheless be compelled by the rule of lenity.

9. **CRIMINAL LAW –  MERGER OF OFFENSES**
   The rule of lenity did not compel merger of convictions for human trafficking by "taking" modality and human trafficking of a minor by persuasion where the statutes punish entirely distinct acts.

10. **CRIMINAL LAW –  MERGER OF OFFENSES**
    Principles of fundamental fairness did not compel merger of convictions for human trafficking by "taking" modality and human trafficking of a minor by persuasion where act of persuading victim was not an "integral component" of act of transporting victim.

11. **CRIMINAL LAW –  MERGER OF OFFENSES**
    A principal justification for rejecting a claim that fundamental fairness requires merger of convictions in a given case is that the offenses punish separate acts of wrongdoing.

Circuit Court for Howard County
Case No. 13-K-16-056934

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 673

September Term, 2017

_____

ARTHUR COLEMAN

v.

STATE OF MARYLAND

_____

Wright,
Kehoe,
Battaglia, Lynne A.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Battaglia, J.

_____

Filed:  April 26, 2018

Arthur Coleman, appellant, was convicted, after a jury trial in the Circuit Court for Howard County, of seven counts of criminal conduct related to the human trafficking of two minors. Specifically, Coleman was convicted of: two counts of transporting a minor for the purpose of prostitution; two counts of attempted transport of a minor for the purpose of prostitution; one count of receiving consideration to place a minor in a place with the intent of causing the minor to prostitute; one count of benefitting financially from taking a minor to a hotel for prostitution; and one count of persuading a minor to leave her home or the custody of her parent or guardian for the purpose of prostitution.

The court sentenced Coleman to a total term of 50 years in prison: 20 years for each count of transporting a minor for the purpose of prostitution, to be served consecutively; 15 years for receiving consideration to place a minor in a place with the intent of prostitution, to be served concurrently with the first transporting conviction; 20 years in prison for benefitting financially from taking a minor to a hotel for prostitution, to be served concurrently with the first transporting conviction; and 10 years in prison for persuading a minor to leave her home or the custody of her parent or guardian for the purpose of prostitution, to be served consecutively to the first two convictions for transporting. The court merged, for sentencing purposes, each of the two convictions for attempted transport of a minor into each of the transporting of a minor convictions. Coleman presents the following questions for our review:

1. Was there sufficient evidence to sustain Coleman's conviction for Count 8, persuading a minor from her home to engage in prostitution on July 22, 2016?

2. Assuming there was sufficient evidence to sustain Coleman's conviction for Count 8, was it appropriate to impose a separate sentence for that offense?

For the reasons set forth below, we shall affirm the judgments of the circuit court.

## FACTUAL BACKGROUND

According to the evidence adduced at trial, in July of 2016, Howard County Police Detective Kalle James-Wintjen of the Vice and Narcotics Unit, became aware that A.M., a thirteen-year-old female, who had been in the custody of the Howard County Department of Social Services, and had run away, was engaged in prostitution. Detective James-Wintjen searched various social media websites in an attempt to locate A.M., and eventually located a profile that the Detective believed belonged to A.M. on the social media website named, Tagged,[1] as well as postings related to her on Backpage.com.[2] On July 21, 2017, the Detective, working in an undercover capacity and posing as a young female, used a false Tagged account to contact A.M., claiming that she, like A.M., was also interested in prostitution.

---

[1] Detective James-Wintjen described "Tagged" as a social media application, similar to Facebook, which allows users to post photographs and comments to their profiles. According to the Detective, the most popular function of the Tagged application is the "chat" function which, she testified, allows users to communicate directly, oftentimes about drugs or sex.

[2] Detective James-Wintjen described "Backpage.com" as a "forum style" website, similar to Craigslist, which contains a small section advertising items for sale, such as furniture or cars, and job postings. The majority of Backpage.com postings, she testified, are ads for prostitution in the form of "adult escort" services and "adult entertainment."

The Detective agreed on July 22, 2017 to meet A.M. that night and join her in going to a "party" in Elkridge to engage in prostitution. A.M. arrived at the agreed-upon location in a car driven by Coleman. B.T., a sixteen-year-old female, who was also the subject of a missing child investigation, was also inside the car.

Coleman was arrested and his car searched. Police recovered his phone from the car, and took possession of A.M.'s phone from her. Coleman's phone contained a contact list that identified certain contacts as "clients," and others as "workers." Coleman's contact information for A.M. identified her as "Worker [A.M.]" and included her photograph.

Evidence adduced at trial also showed that Coleman had sent A.M. text messages between July 14, 2016 and July 22, 2016, identifying himself as "the dude that throw[s] parties," asking A.M. if she was "available for [a] party," did she "want to make some money," and would she be willing to participate in a "freak party," which he told her was not for "shy girls" because, as he explained, it was a party in which everyone has sex in one room at the same time. Additional text messages from the same time period revealed that Coleman had promised A.M. that he would "spoil" her, pay for her to have her hair done, give her "all the big moves" to make lots of money, and that he wanted her to be his "little partner" in their prostitution venture.

On July 22, 2016, Coleman also texted A.M. that he was hosting a party that night, according to evidence adduced at trial. He instructed A.M. to bring other "girls" with her to the party and told her that he would pick them up and bring them to the party that night.

The State also introduced into evidence two ads posted on Backpage.com dated July 22, 2016 that had been associated with an e-mail address that was identified with Coleman's cell phone. The postings, titled "Saturday Night Adult Freak Party, Tattoo Party," included A.M.'s photograph, and advertised a party of fifteen girls with a $30.00 entry fee. In his statement to police, which was introduced at trial, Coleman further acknowledged that on July 22, 2016, he had picked up A.M. from Baltimore to take her to a party, but he denied that he knew the location of the party or that he was hosting the party.

As aforementioned, Coleman was convicted of persuading a minor to leave her home or the custody of her parent or guardian for the purpose of prostitution, as well as other charges. Coleman noted a timely appeal.

## DISCUSSION

### I.

### Sufficiency of the Evidence

Coleman was convicted of violating Section 11-305 of the Criminal Law Article of the Maryland Code (2002, 2012 Repl. Vol., 2016 Supp.), which provides:

(a) for the purpose of committing a crime under Title 3, Subtitle 3 of this article, a person may not:

> (1) persuade or entice or aid in the persuasion or enticement of an individual under the age of 16 years from the individual's home or from the custody of the individual's parent or guardian; and
>
> (2) knowingly secrete or harbor or aid in the secreting or harboring of the individual who has been persuaded or enticed in the manner described in item (1) of this subsection.

Coleman argues that the evidence was insufficient to sustain his conviction because the statute required the State to prove that he had persuaded or enticed A.M. to leave her home, which it failed to do because A.M. had already "left home." Second, he argues that the statute prohibits only the persuasion or enticement of a minor who is not already engaged in prostitution, while A.M. was already a prostitute.

The State argues that it presented evidence sufficient for the jury to find that appellant persuaded A.M. from her home for the purpose of engaging in prostitution. Further, the State argues that the plain language and legislative intent of the statute do not support Coleman's interpretation that it applies only in the case of a minor who was not already engaged in prostitution.

In deciding any claim relating to the sufficiency of the evidence, the appropriate inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hall v. State*, 233 Md. App. 118, 137 (2017) (quoting *State v. Coleman*, 423 Md. 666, 672 (2011) (internal quotation marks omitted).

5

Coleman contends that the evidence showed that A.M. had run away from home and started working as a prostitute in June of 2016, one month before he made contact with her. In support of his motion for acquittal, he argued that A.M. "was not persuaded from her home by [him] because she was already away from her home," and therefore, that element of the statute had not been met. He contends that the trial court erred in adopting the State's interpretation of the statute, whereby its elements are met when a perpetrator "persuades a child under 16, who has already run away from home and is already working as a prostitute to leave wherever she is residing to engage in prostitution on a given day."

Coleman initially asserts that the first provision of Section 11-305(a)(1) is ambiguous, because its application could be two-fold, in that it could "conceivably apply to a child who had already left home to begin working as a prostitute when the perpetrator approached her, as well as a child who the perpetrator convinced to leave home and begin working as a prostitute for the first time." Coleman contends the former interpretation is not sound, because the statute's legislative history is clear that Section 11-305 was not intended to apply in the case of a child who had already left home as well as had already engaged in prostitution, when the perpetrator approached her.

"The cardinal rule of statutory construction is to ascertain and give effect to the intent of the General Assembly." *Twigg v. State*, 447 Md. 1, 24 (2016) (citation omitted). When interpreting statutory language, we look first "to the plain language of the statute, 'on the tacit theory that the Legislature is presumed to have meant what it said and said

6

what it meant.'" *Haile v. State*, 431 Md. 448, 466 (2013) (quoting *Witte v. Azarian*, 369 Md. 518, 525 (2002)). "We do not, however, add or delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, nor do we construe a statute with forced or subtle interpretations that limit or extend its application." *Id.* at 467 (citation and internal quotation marks omitted). If the language is unambiguous, our search for legislative intent ends. *Id.*

A statute is ambiguous, however, if it is subject to "two or more reasonable alternative interpretations[.]" *Id.* (citation omitted). In resolving ambiguity in a statute, we "take into account the history of the statute, the evils or mischief the Legislature sought to remedy, and the prevailing mood of the legislative body with respect to the type of criminal conduct involved." *Moore v. State*, 388 Md. 446, 453 (2005) (citation and internal quotation marks omitted). "We seek to avoid construction of a statute that is unreasonable, illogical, or inconsistent with common sense." *Id.*

With respect to the term, "home" in the phrase "from the individual's home," we note that the term is not defined in the statute or in its larger Title. The fact that "home," though, may have more than one meaning is not troublesome.

When confronted with interpreting "home" in another statute, the Court of Appeals in *Wright v. State*, 349 Md. 334 (1998), acknowledged that a child could have more than one "home" for purposes of determining whether, under the child abuse statute, a step-parent qualified as a "household member" in the victim's "temporary home." The statute in issue was Maryland Code, Article 27, Section 35C, the

7

predecessor to Section 3-601 of the Criminal Law Article of the Maryland Code (2002, 2012 Repl. Vol., 2017 Supp.), in which the words "in a home of a child" were used, and the Court recognized that the term, "home" can have many meanings in a statute without rendering the statute vague:

> Words like "home," "resident," and "household" are not capable of singular, absolute, generic definition in the law, because they are used in so many different ways and for so many different purposes. They may mean one thing to the census taker, another to an automobile insurer, one thing for voting purposes or for establishing venue in litigation, another for determining where to mail a letter. When the law uses such a word as a substitute for domicile, it may encompass only one, permanent, fixed abode, without regard to where the individual may be actually residing at a given moment. In other contexts, it may instead mean where the person is staying at the moment. The flexibility in these terms is especially important with respect to children, who are more frequently part of several homes and households. If their parents are separated or divorced, they likely will spend time and have clothes and belongings in the homes of both parents; they may visit grandparents or other relatives for varying periods of time; they may be off to camp during the summer. **Where their "home" is at any given time may well depend on what is at stake in ascertaining where their home is.**

349 Md. at 355-56 (emphasis added).

Application of the *Wright* standard to the case at bar when ascertaining where "home" is, depending on "what is at stake," leads us to the conclusion that the term "home" as used in Section 11-305(a)(1), refers to the current residence of a child. In the present case, evidence adduced at trial indicated that in response to a text message from Coleman asking A.M. if she wanted to make some money and where she would be at 8:30 p.m. that night, A.M. responded, "**Home** 940 [N.] Eden [S]t." In another text, Coleman asked A.M. if she could "stay and make money or [you] got to go **home**."

8

Coleman's use of the term, "home" is consistent with the "flexible" and ordinary meaning of the word as referring to wherever someone might be currently residing, and presumably, where A.M. was residing at that time. Accordingly, we reject Coleman's contention that the evidence was insufficient to establish that he had persuaded A.M. from her "home," where he understood A.M. to be.

In addition, Coleman contends that the larger statutory scheme and the legislative history of Section 11-305(a)(1) demonstrate that the statute was not intended to apply to conduct such as his, where he persuaded a child, who was already engaged in prostitution, to continue to work as a prostitute. Rather, he asserts that the statute is intended to "punish defendants who persuade children to leave home and become prostitutes where those children were not already engaged in the trade."

The origin of Section 11-305 can be traced back to 1876, when a bill was introduced and enacted as Section 1 of Article 30 under the title "Crimes and Punishments," with a subtitle "Abduction" which provided "for the punishment of abduction of children" as follows:

> That any person or persons, who shall, for purposes of prostitution, forcibly abduct from her home or usual place of abode, or from the custody and control of her parent … any female under the age of eighteen years, or be accessory thereto, or who shall, for said purposes, **persuade or entice from her usual place of abode, or from the custody and control of her parent** … shall, upon conviction, be deemed guilty of a misdemeanor, and shall undergo imprisonment … not exceeding a term of eight years.

9

1876 Md. Laws, Chap. 324.[3] [4]  Section 2 of the statute also criminalized forcible abduction or kidnapping of children under the age of twelve years.  *Id*.

In 1890, the statute was renumbered as Section 1 of Article 27, while Section 2, addressing child kidnapping, was removed.  1890 Md. Laws, Chap. 448.  Revisions to the law in 1966 changed the penalty from a misdemeanor to a felony, 1966 Md. Laws, Chap. 628, but in 1978, the penalty was returned to that of a misdemeanor.  1978 Md. Laws, Chap. 1019.  Also in 1978, the term "individual" was substituted for "female," and the age provision was lowered from eighteen years to sixteen years.  *Id*.

---

[3] Section 1 of the statute also included a provision similar to that of § 11-305 (a)(2), making it illegal to "secrete or harbor any such female so abducted, persuaded or enticed[.]"  Chapter 324, Acts of 1876.

[4] The only reported Maryland decision interpreting the statute, *Brown v. State*, 72 Md. 468 (1890), applied the 1876 version of the statute.  In *Brown*, the issue before the Court was whether the defendant had persuaded or enticed a minor, who was under the age of eighteen and had left her parents' home, to work at the defendant's brothel.  *Id.* The Court determined that the trial court had erred in precluding the defendant from introducing evidence that she did not persuade the minor to leave her home, and that the minor had done so, and arrived at the brothel, on her own volition.  *Id*.  As Coleman notes, however, *Brown* did not answer the question that he presents here as to "whether the law applies where a child has already run away from home and begun working as a prostitute by the time the defendant approaches her."  As such, Coleman's reliance on *Brown* as "consistent with [his] interpretation of § 11-305" is misplaced, and we are not persuaded of its relevance here.

In 2001, the General Assembly revised Article 27 in an effort to restate and consolidate the laws concerning prostitution[5] into one subheading, "Prostitution and Related Crimes." *See* Judiciary Committee Bill Analysis for House Bill 611, 2001 Leg., 415th Sess. (Md. 2001). The Bill Analysis regarding the proposed revisions to Article 27 explained that, "[t]he Article 27 Committee was appointed in 1991 by the Speaker and the President and charged with making both substantive and stylistic changes to the State's criminal law." As part of these revisions, the "forcible abduction" form of the offense was removed from the 2001 version of the statute. *Id.*

As revised in 2001, Section 430 of Article 27 provided:

(a) *Prohibition.* – For purposes of prostitution or committing a crime under the sexual offenses subheading of this article, a person may not:

> (1) Persuade or entice or aid in the persuasion or enticement of a person under the age of 16 years from the person's home or from the custody of the person's parent or guardian; or

> (2) Knowingly secrete or harbor or aid in the secreting or harboring of a person under the age of 16 years who has been persuaded or enticed in the manner described in item (1) of this subsection.

(b) *Violation; penalties.* – A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment in the penitentiary not exceeding 10 years or a fine not exceeding $5,000 or both.

---

[5] House Bill 611 repealed "existing provisions of law concerning abduction of individuals under the age of 16 years for prostitution or sex-related purposes; prostitution, bawdyhouses and houses of ill fame; pandering and related crimes; and transportation for purposes of prostitution or lewdness." *See* Judiciary Committee Bill Analysis for House Bill 611, 2001 Leg., 415th Sess. (Md. 2001).

2001 Md. Laws, Chap. 674. In 2002, the General Assembly added the Criminal Law Article to the Maryland Code so that Section 430 of Article 27 was recodified without substantive change as Section 11-305. 2002 Md. Laws, Chap. 26.

In 2014, the Legislature amended Section 11-305, reclassifying violations of the statute from misdemeanors to felonies, subject to imprisonment up to 25 years, and a fine of $5,000 or both. Chapters 168 and 420, Acts of 2014. According to an Issue Brief distributed to legislators regarding the proposed legislation, House Bill 701 ("H.B. 701") and Senate Bill 454 ("S.B. 454"), stated that "[t]he commercial sexual exploitation of children and sex trafficking are egregious crimes and the penalties must reflect the severity of the offense," and further explained that the purpose of the 2014 amendment was to "[i]ncrease the crime classification for abduction of a minor under 16 when the purpose is for prostitution … to a felony, reflecting the severity of the crime and aligning [it] to the penalty provided for sex trafficking of a child [Section 11-303(c)(2)] … punishable by up to 30 years['] imprisonment, a fine not to exceed $5,000, or both." Issue Brief H.B. 701 S.B. 454, 2014 Leg., 434th Sess. (Md. 2014).

It is this point in the legislative history that Coleman refers us to written testimony submitted by anti-human trafficking organizations and law enforcement in support of H.B. 701 and S.B. 454 which he alleges indicates that they believe that Section 11-305 was intended to apply only when a child, who has not previously engaged in prostitution was convinced, to leave home and become a prostitute. Coleman cites only to a portion of written testimony referencing the ages when children "enter into prostitution" as well

as references by various organizations, including the Office of the Attorney General that referred to the "'abduction' or 'kidnapping' of children "for the purpose of prostitution."

Coleman, though, disregards the plethora of written testimony and submissions that recognized that experienced prostitutes who were children could continue to be the subjects of illegal trafficking and their prior experience of being prostituted did not render them "damaged goods." *See* Testimony of Tahira Mussarat Hussain, Member, Advocacy Group Against Slavery and Trafficking ("AGAST"), and member, Maryland Human Trafficking Task Force, in support of H.B. 701 and S.B. 454, 2014 Leg., 434th Sess. (Md. 2014) ("A victim's involvement in trafficking is often the result of violent and abusive coercion and grooming by a pimp. The older "prostitutes" that law enforcement encounter in the street are oftentimes children who were victimized by trafficking at a young age and have not been able to leave their trafficker"); and Testimony of Nancy Winston, Senior Director, Shared Hope International and Member, Maryland Human Trafficking Task Force, in support of H.B. 701 and S.B. 454, 2014 Leg., 434th Sess. (Md. 2014) ("Thousands of children are exploited through prostitution every year in the United States and the average age of entry is 13 years of age … sex-for-sale ads on Backpage.com and similar sites feature dozens of young looking Maryland girls every day. We have found that young teens from all types of home environments and socioeconomic statuses are particularly vulnerable to the interpersonal approaches used by traffickers who pose as boyfriends, recruiters for modeling agencies, and the like.")

13

Thus, we find no evidence in the legislative history to support Coleman's position that the law was intended to apply only to a perpetrator who convinces a child, who has not already left home, to leave home, and begin prostituting for the first time. Indeed, we reject such an interpretation of the statute that would suggest that one "becomes a prostitute," connoting a permanent change in one's status. More aptly, one "prostitutes" or "engages in prostitution;" as a verb, which can occur more than once.

Our instant rejection of Coleman's "damaged goods" theory is consistent with our previous rejection of a similar argument in *Lindsey v. State*, 235 Md. App. 299 (2018), *cert. denied*, ___ Md. ___ (Petition No. 495-17, April 20, 2018), a human trafficking case in which Lindsey sought to introduce evidence that the victim had engaged in prostitution independently on another occasion, so that allegedly, he did not force her to prostitute on the date alleged in the indictment. We determined that evidence of the victim's alleged prostitution on another occasion was not relevant to the determination of whether Lindsey had forced her to prostitute on the date in question, and that it was not error for the trial court to exclude the evidence. *Id.* at 324.

As a result, we conclude that Coleman's construction of Section 11-305 is unsupported by its legislative history and antithetical to the statute's purpose of punishing traffickers who exploit children by persuading or enticing them to leave home to engage in prostitution, including those children who have been victims of sexual exploitation in the past.

## II.

## Merger

Coleman claims that the trial court erred in imposing separate sentences for his conviction under Section 11-305 for persuading A.M. to leave her home to prostitute and for his conviction under Section 11-303(a)(1) for transporting A.M. to Elkridge to prostitute, as well as for attempting to transport her to the District of Columbia to prostitute. Section 11-303(a)(1)(i) states, in relevant part, that, "[a] person may not knowingly…take or cause another to be taken to any place for prostitution," while Section 11-305 provides that a person may not "(1) persuade or entice or aid in the persuasion or enticement of an individual under the age of 16 years from the individual's home or from the custody of the individual's parent or guardian; and (2) knowingly secrete or harbor or aid in the secreting or harboring of the individual who has been persuaded or enticed in the manner described in item (1) of this subsection."

Coleman asserts that because there is no indication that the Legislature intended to impose separate punishments for violations of Section 11-303(a)(1) and Section 11-305, these offenses should have been merged for sentencing purposes, under the rule of lenity or as a matter of fundamental fairness. The State maintains that merger under the rule of lenity is not appropriate because Section 11-303(a)(1) and Section 11-305 punish different acts. With regard to Coleman's fundamental fairness claim, the State also contends that Coleman failed to preserve this claim, and even if preserved, the imposition of dual sentences would not be fundamentally unfair.

15

The merger doctrine prohibits multiple punishments for the same offense. *Moore v. State*, 163 Md. App. 305, 314 (2005). Pursuant to Maryland Rule 4-345(a), a court may "correct an illegal sentence at any time." We have recognized that a failure to merge a sentence, when merger is required, is considered to be an 'illegal sentence' under the rule. *Pair v. State*, 202 Md. App. 617, 624 (2011).

A defendant's convictions may be merged, for sentencing purposes, based on one of three grounds: "(1) the required evidence test; (2) the rule of lenity; and (3) the principle of fundamental fairness." *Carroll v. State*, 428 Md. 679, 693-94 (2012) (citations and internal quotation marks omitted). "'Under federal double jeopardy principles and Maryland merger law, the principal test for determining the identity of offenses is the required evidence test.'" *Washington v. State*, 200 Md. App. 641, 653 (2011) (quoting *Dixon v. State*, 364 Md. 209, 236 (2001)). "The 'required evidence test,' also known as the '*Blockburger* test,' *see Blockburger v. United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), is applied by determining whether the elements of one offense are completely subsumed by the elements of the other offense, so that one is the lesser included offense of the other." *Id.*

Here, Coleman does not contend that his offenses under Sections 11-303(a)(1) and 11-305 should have merged under the required evidence test, appearing to concede that, because each offense contains an element that the other does not, merger would not be warranted under the required evidence test. Nevertheless, he asserts that his convictions under Sections 11-303(a)(1) and 11-305 should have merged under the rule of lenity.

16

The rule of lenity provides another standard for determining merger for sentencing purposes. *See McGrath v. State*, 356 Md. 20, 24-25 (1999) ("[T]he required evidence test is not the exclusive standard under Maryland law for determining questions of merger, and even where two offenses are separate under the required evidence test, there still may be a merger for sentencing purposes based on considerations such as the rule of lenity[.]" (citation and internal quotation marks omitted)). As the Court of Appeals has explained:

> Two crimes created by legislative enactment may not be punished separately if the legislature intended the offenses to be punished by one sentence. It is when we are uncertain whether the legislature intended one or more than one sentence that we make use of an aid to statutory interpretation known as the "rule of lenity." Under that rule, if we are unsure of the legislative intent in punishing offenses as a single merged crime or as distinct offenses, we, in effect, give the defendant the benefit of the doubt and hold that the crimes do merge.

*Monoker v. State*, 321 Md. 214, 222 (1990).

Sections 11-303(a)(1) and 11-305 punish entirely distinct acts. Coleman was convicted under Section 11-303(a)(1) for the act of "taking" A.M. to Elkridge to prostitute, because it states, that, "[a] person may not knowingly…take or cause another to be taken to any place for prostitution." In contrast, Section 11-305 specifically punishes the offense of child exploitation, by persuading or enticing a minor to leave home or the custody of a parent or guardian to prostitute, in the present case, in a separate set of circumstances. Coleman's enticement of A.M. began with his "grooming" efforts, including textual promises that he would spoil her and help her make money, eventually culminating in persuading A.M. to join him in his entrepreneurial venture on July 22, 2016. Consequently, we conclude that, in this case, merger of Coleman's conviction

under Sections 11-303(a)(1) into his conviction under Section 11-305 is not required under the rule of lenity.

Coleman further contends, however, that even were his convictions not to merge under the rule of lenity, merger is required as a matter of fundamental fairness, because the persuading of A.M. to leave her residence to engage in prostitution on July 22nd was "part and parcel" of his transporting her somewhere for the purpose of prostitution. The State argues, relying on *Pair v. State*, 202 Md. App. 617 (2011), that Coleman did not preserve his fundamental fairness claim because he failed to raise that claim before the trial court. We agree with the State that Coleman's fundamental fairness argument is not preserved for review. *See Pair*, 202 Md. App. at 625, 649 (declining to review an unpreserved fundamental fairness argument on the ground that fundamental fairness does not enjoy the "procedural dispensation" of "inherent illegality" found in Maryland Rule 4-345, which exempts other merger arguments from preservation requirements).

Even, however, were we to consider Coleman's fundamental fairness argument, we would conclude that principles of fundamental fairness do not require merger of his convictions under Section 11-303(a)(1) and Section 11-305, because Coleman's acts of persuading A.M. were not "integral components" of his action of transporting her. Indeed, the two offenses are entirely independent of one another. As the Court of Appeals in *Carroll*, *supra*, has explained: "In deciding whether fundamental fairness requires merger, we have looked to whether the two crimes are 'part and parcel' of one another, such that one crime is 'an integral component' of the other." *Carroll*, 428 Md. at

18

695 (quoting *Monoker*, 321 Md. at 223-24). The Court further noted, "[o]ne of the principal reasons for rejecting a claim that fundamental fairness requires merger in a given case is that the crimes punish separate wrongdoing." *Id.* at 697.

In the present case, Coleman was convicted under Section 11-303(a)(1) of driving A.M. to Elkridge and of attempting to drive her to the District of Columbia; Coleman also was convicted under Section 11-305 for his acts of persuading or enticing A.M. to engage in his "prostitution venture" on July 22, 2016. We perceive no unfairness in punishing Coleman separately for persuading A.M. to engage in prostitution and for driving her to Elkridge, as well as attempting to drive her to the District of Columbia.

**JUDGMENTS OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**