**UNITED STATES of America**

**v.**

**Nathaniel STRATTON.**

**Crim. No. 74–581.**

United States District Court,
E. D. Pennsylvania.

April 28, 1975.

Robert E. J. Curran, U. S. Atty., for the E. D. Pa., Walter S. Batty, Jr., Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Ronald B. Abrams, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

This matter comes before the Court on the defendant's Motion for a New Trial after a jury verdict of guilty on the one count charged in the indictment. The count upon which the defendant was found guilty was as follows:

## COUNT I

THE GRAND JURY CHARGES:

On or about October 31, 1973, NATHANIEL STRATTON, did knowingly and wilfully and with unlawful and fraudulent intent transport and cause to be transported in interstate commerce from Philadelphia, State of Pennsylvania, in the Eastern District of Pennsylvania to Rochester, State of New York, a falsely made and forged security, to wit,

Check Number: lab 4705
Date: October 31, 1974
Amount: $93.47
Payee: Robert Carr

the said NATHANIEL STRATTON then knowing said security to have been falsely made and forged.

In violation of Title 18, United State Code, Sections 2314 and 2.

The Government's theory at trial was that the defendant forged the endorsement of Robert Carr on the back of a Greenfield Construction Company check drawn on a bank located in Rochester, New York and cashed the check at a Sears and Roebuck store located in Northeast Philadelphia. At the trial of this case the following evidence was presented by the Government in support of its case. On February 22, 1974, F.B.I. Special Agent Frank A. Commander, who was assigned to investigate the theft of certain Greenfield Construction Company checks, interviewed the defendant. (N. T. 1–90, 1–91). After an initial denial of any knowledge of the theft of any Greenfield Construction Company checks, Agent Commander showed the defendant a Regiscope photograph taken at a Sears and Roebuck Company store, picturing the defendant in one portion of the photograph and a Greenfield Construction Company check in the other. After viewing the Regiscope photograph, the defendant, in response to a question from Agent Commander, stated that he had cashed "a couple" of Greenfield Construction Company checks. (N.T. 1–91). Agent Commander also testified that at a subsequent interview with the defendant he obtained court ordered handwriting samples from the defendant. (N.T. 1–91).

The Government also introduced the Regiscope photograph which was displayed to the defendant by Agent Commander and which showed that a person looking like the defendant obtained cash for a Greenfield Construction Company check, dated October 31, 1973, in the amount of $93.47 in a Sears and Roebuck Company store in Northeast Philadelphia. (N.T. 1–43). The Government produced this check on which the signature of the Maker was Robert Consalvo and the signature of the endorser was Robert Carr. The stamps on the check revealed that the check had been cashed at the Northeast Philadelphia Sears and Roebuck Company store. (N.T. 1–41). A witness from the Lincoln First National Bank of Rochester, the bank at which the Greenfield Construction Company had its checking account, testified that Robert Consalvo was not an authorized signatory of the Greenfield Construction Company. (N.T. 1–60, 1–61).

The Government also produced the testimony of a handwriting expert who compared the handwriting sample given by the defendant to Agent Commander with the "Robert Carr" on the back of the Greenfield check shown in the Regiscope photo. (N.T. 2–63). The expert testified that in his opinion the person who made the handwriting examplar of the

defendant also wrote the endorsement "Robert Carr" on the back of the Greenfield Construction Company check in question. (N.T. 2–65).

The defendant contends that the Court erred in permitting into evidence a Regiscope photograph showing in the bottom portion of the photograph the picture of a person who looks like the defendant and, in the top portion of the photograph, the Greenfield Construction Company check dated October 31, 1973 in the amount of $93.47 payable to Robert Carr, together with a Social Security card in the name of Robert Carr. Defendant argues that the Regiscope photograph should not have been admitted into evidence because it was not properly authenticated.

■■■ The admission or rejection of a photograph lies largely in the sound discretion of the trial judge. United States v. Moton, 493 F.2d 30 (5th Cir. 1974); Jackson v. United States, 129 U.S.App.D.C. 392, 395 F.2d 615 (1968). It is also true that photographs, to be admitted into evidence, must be authenticated. Mikus v. United States, 433 F. 2d 719 (2d Cir. 1970), 29 Am.Jur.2d, Evidence § 788. The Government called to the stand a Mr. Frank Llewellyn who testified that he was the security officer at the Sears and Roebuck Company store in Northeast Philadelphia. (N.T. 1–40). He testified that he handled all checks cashed at the store and identified the check in question as having been cashed at the Northeast Philadelphia Sears and Roebuck Company store. (N.T. 1–40, 1–41). He further testified that when a person presents himself at the cashier's office of the Northeast Philadelphia Sears and Roebuck Company store and attempts to cash a check, a Regiscope camera is used to photograph the face of the individual, the check he is cashing, and some identification of the person cashing the check. (N.T. 1–42). He explained that two lenses are used to photograph the person and the documents simultaneously. (N.T. 1–47, 1–48). When the 2,000 pictures on the roll of film in the camera are used, it is his duty to remove the roll of film, place a new roll of film in the camera, and send the exposed roll of film to Filmdex Corporation in Virginia for storage. (N.T. 1–45). He further testified that when a particular photograph is desired, it is his duty to send a film request to Virginia and the photograph is then returned to him at the Sears and Roebuck Company store in Northeast Philadelphia. (N.T. 1–45, 1–46).

Mr. Llewellyn also testified that prior to photographing all persons cashing checks, the cashier imprints a number on the face of every check which identifies the store in which the Regiscope photograph was taken. (N.T. 1–42, 1–43). He pointed out that in this case, the number 016949 on the check showed that the Regiscope photograph was taken at the Northeast Philadelphia Sears and Roebuck Company store at the time the check was cashed. (N.T. 1–43).

The Regiscope photograph admitted into evidence in this case bore a remarkable resemblance to the defendant. This similarity is enough to authenticate the portion of the photograph showing the face of the defendant and would permit its introduction, absent the documents which are also in the photograph. United States v. Hobbs, 403 F.2d 977 (6th Cir. 1968); United States v. Sanders, 322 F.Supp. 947 (E.D.Pa.1971). As heretofore stated, there was additional testimony at trial linking the defendant to the check pictured in the Regiscope photograph. The Government's handwriting expert testified that, in his opinion, the Robert Carr endorsement on the back of the check was the handwriting of the defendant (N.T. 2–65). At the time of trial, and now, this Court is of the opinion that the evidence heretofore discussed provided sufficient authentication to permit the introduction of the Regiscope photograph.[1] See

1. Defendant argues that Sisk v. State, 232 Md. 155, 192 A.2d 108 (1963) controls the introduction of the Regiscope photograph. We note, however, that unlike Sisk there is

United States v. Diggs, 423 F.2d 1194 (4th Cir. 1970).

The defendant contends, however, that there was insufficient testimony concerning the mechanical process involved in taking the Regiscope photograph to permit its introduction. He argues, for example, that the Government's witness failed to explain whether it would be possible for the same documents to be exposed with several different people in front of the camera. While technical evidence of the nature set forth in the objection, if available, might properly be offered and eliminate controversy, it is not essential that such evidence be produced. In United States v. Hobbs, 403 F.2d 977 (6th Cir. 1968), the Court in discussing the quantum of evidence required for the introduction of a photograph in a criminal case said:

Some objection to the admissibility of these photographs was made on the basis of Mrs. Tomlinson's inadequate knowledge of the technical processes by which they were taken and printed. This argument has greater than normal superficial attraction here because of the sophisticated nature of the photographic equipment involved. However, a moment's reflection will dispel that attraction. Concerning any photographic operation only the most scholarly expert could testify as to the manner in which the original image is transmitted through the lens of the camera to the emulsion on the film or plate, the development of the latent image, the printing by a contact or projection process, and concerning the chemical procedures involved. Even where an occasional qualified witness may be available to testify as to such details such testimony would obviously be irrelevant and immaterial. What is material is what the rankest box camera amateur knows, namely that he "gets" what he sees. We thus come full circle to

the judicial test accurately stated by Judge Miller as being whether the proferred photograph is an accurate representation of the scene depicted. The unrealistic roadblocks which would be created if, as in the case of certain other categories of exhibits, each step in the production of a proffered photograph was required to be proven would frequently deprive the trier of the facts of evidence not subject to the foibles of the imperfect memories and passions and prejudices of human witnesses.

403 F.2d at 978. (Citations omitted). See also United States v. Wilkins, 477 F.2d 323 (8th Cir. 1973); Mikus v. United States, 433 F.2d 719 (2d Cir. 1970).

Moreover, even if the Regiscope photographer should not have been admitted at the trial, there was sufficient evidence, independent of the photograph, to sustain a conviction of the defendant. As outlined above, the defendant admitted cashing "a couple" of Greenfield Construction Company checks. The Government's handwriting expert testified that in his opinion the defendant had endorsed the signature of Robert Carr on the back of the check in question. Even without the Regiscope photograph of the defendant, the evidence against him was sufficient to convict the defendant of transporting a forged security.

Defendant also contends in his motion for a new trial that the statements made by the defendant on February 22, 1974 to Agent Commander concerning the theft of Greenfield Construction Company checks should have been suppressed. However, the defendant has not provided the court with a brief on his contentions for suppression of the statements. The record of the suppression hearing, which was conducted prior to trial pursuant to a motion by the defendant, revealed the following.

independent evidence in this case linking the defendant to the check in the Regiscope photograph as well as an admission by the defendant that he had cashed "a couple" Greenfield Construction Company checks.

Pursuant to a telephone call made to the defendant's residence at 2215 Federal Street, the defendant met three F.B.I. agents outside his residence and without hesitation got into the back seat of the F.B.I. automobile. (N.T. Suppression Hearing, 6, 24).[2] After the automobile had driven away and the defendant was introduced to the F.B.I. agents who were present, the defendant was read an "Interrogation; Advice of Rights" form which contained the required *Miranda* warnings. (N.T. Suppression Hearing, 7, 25). After reading the form to the defendant, the form was given to the defendant to read and he was asked if he understood the form. (N.T. Suppression Hearing, 7, 8). Although the defendant stated that he couldn't read, he did state that he understood the form and signed the form waiving his right to remain silent and his right to counsel. (N.T. Suppression Hearing, 8, 25).[3] The defendant was then questioned in connection with the F.B.I.'s investigation of the Greenfield Construction Company checks. He denied any involvement with Greenfield Construction checks until confronted by Agent Commander with the Regiscope photograph in question. At that point the defendant stated that he had cashed "a couple" Greenfield Construction Company checks. The defendant then stated that he no longer wanted to answer any questions concerning the Greenfield Construction Company checks. (N.T. Suppression Hearing, 16, 32). At this point the questioning ceased and the defendant was returned to his residence. (N.T. Suppression Hearing, 16, 32).

This record clearly reveals that the defendant was given all the warnings required under the *Miranda* decision, that he knowingly and intelligently waived his constitutional right to remain silent and to have an attorney present during any interrogation, and that all questioning ceased when the defendant stated that he did not want to answer any further questions. Furthermore, the record shows that the statements given by the defendant were voluntary and not the result of coercion by the agents.

Accordingly, the following Order is entered:

### ORDER

And now, this 28th day of April, 1975, upon consideration of the defendant's Motion for a New Trial, it is hereby ordered that the Motion is denied.

---

2. The interview was conducted in the automobile rather than at 2215 Federal Street because the agents believed that this was the residence of the defendant's mother and the agents desired to conduct the interview in privacy. (N.T. Suppression Hearing, 6).

3. The defendant admitted having signed similar forms on at least four prior occasions. (N.T. Suppression Hearing, 25).